**BAETJER et al. v. GARZOT et al.**

No. 3655.

Circuit Court of Appeals, First Circuit.

Jan. 8, 1942.

E. T. Fiddler, of San Juan, P. R. (Fiddler, McConnell & Gonzalez, of San Juan, P. R., on the brief), for appellants.

Henry G. Molina, of San Juan, P. R. (Rogelio Fernandez Garzot, of Naguabo, P. R., on the brief), for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal by the defendants from a decree of the District Court of the United States for the District of Puerto Rico ordering them to convey to the plaintiffs a certain parcel of land situated in Naguabo, Puerto Rico in consideration of the sum of $1,762.

Jurisdiction is based upon diversity of citizenship and an amount in controversy in excess of $3,000.

The pertinent facts may be briefly summarized as follows:

On August 21, 1916 Juan R. Garzot and his wife Rosario Aguayo de la Fuente executed a "deed of purchase and sale" in which they conveyed the parcel of land in question, which they called "Central Triunfo", to a corporation named Garzot y Fuertes. The deed recited that the parties thereto "have agreed upon the purchase and sale of the property * * * in order that there may be built on the same a sugar factory or central for the grinding of canes." It also contained the following provision:

"Fourth: The parties make it appear that if at any time the factory of the Central should be removed or destroyed, and its owners should not wish for any reason to construct it again, and should so state, Mr. Garzot shall have the right to re-acquire (hacer suya) the property sold, upon returning the price which is the subject of this sale,[1] in which case the Corporation shall execute in his favor the corresponding deed of transfer."

It appears that Garzot y Fuertes constructed a mill for grinding sugar cane on the Central Triunfo property and that it operated that mill up to and through the grinding season of 1928. The mill was last used, and then only for a short time, in 1929, in which year it was damaged by a cyclone. In 1932 it was partially blown down by a hurricane. Some repairs were made in 1933, but it was not put into operating condition. Since 1933 the land has been used only as an accumulation point for cane to be ground at another mill. In 1937 the mill buildings and machinery were sold by the Riverside Corporation, the then owner, and during that year and the year following both machinery and buildings were removed from the property.

The plaintiffs are the heirs and successors of Juan R. Garzot. The defendants, as trustees of Eastern Sugar Associates, are the present owners of Central Triunfo, having acquired their title from the Riverside Corporation on December 7, 1937.

The District Court found that all the conditions set forth in clause four of the deed had occurred, at least in substance, and ruled as a matter of law that the clause was valid and binding upon the defendants. Accordingly it ordered:

"A judgment will be entered in favor of plaintiffs upon their payment to defendants of the sum of $1,762 or a deposit of such amount in the registry of the court. Upon such payment or deposit being made defendants will be allowed a reasonable time within which to remove any buildings, structures or other movable property from the premises and must then execute a deed of conveyance to plaintiffs."[2]

---

[1] $1,762.

[2] The judgment itself reads: "The defendants shall have ninety (90) days from the date of this decree within which to remove from the property involved herein any buildings, structures or other movable property thereon."

It is from the judgment entered in conformity with this order that the defendants appeal.

The court adopted as one of its findings of fact an allegation of the plaintiffs' amended bill of complaint which reads: "(10) That the said sugar factory 'Central Triunfo' was removed from said property between the months of July and December, 1937; that the defendants do not intend to reconstruct said sugar factory and they have so stated."

In further elaboration of this point the District Court found that "the defendants removed said sugar factory and unquestionably, in the opinion of this court, * * * do not intend to reconstruct said factory, or another factory, or to use the said property for the maintenance and operation of a sugar factory," and again, "Their (the defendants') whole conduct speaks most eloquently to the effect that the use of this property as a factory site has been abandoned."

From the foregoing it is clear that the court below found that the conditions upon which the vendor's right to repurchase was made to depend had occurred. That is, it found, (1) that the mill erected upon Central Triunfo had been removed or destroyed, (2) that the owners did not wish for any reason to construct it again, and (3) that they had so stated.

The defendants admit that the first of these conditions has occurred, but they contend that there is no evidence from which it could be found that the other two have. Their position with respect to the second and third conditions is not well taken. In view of the fact that the mill on the property has not been operated since 1929, and that since 1933, the property has been used only as a place upon which to accumulate cane for other mills; in view of the fact that the mill machinery and buildings were sold and removed in 1937 and 1938, and no new mill has since been erected; and in view of the testimony, to be considered in more detail hereafter, that a mill on that site would serve no useful purpose since other mills in operation could grind all the cane being raised in the locality, we cannot say that the court below erred in its finding that the defendants did not intend to construct another mill on the Central Triunfo property.

A more difficult question is presented with respect to the third condition. The evidence on this point is not as clear and explicit as it might be. The situation disclosed is briefly as follows: On December 29, 1936, the Riverside Corporation acquired title to Central Triunfo from the National City Bank of New York, and on December 7, 1937, the Riverside Corporation conveyed it to the defendants herein. There is testimony to the effect that early in 1937, while title stood in the name of the Riverside Corporation, one Harry A. Nadler, who described himself on the stand as general manager for Puerto Rico of the Eastern Sugar Associates, said to the husband of one of the plaintiffs with reference to Central Triunfo, "We are going to remove the Central from there," and there is also testimony that he made no mention at that time or at any other of constructing another one. It further appears that on that occasion he also said that the capacity of another local mill "was sufficient to take care of all the cane included in the lands of the Central Triunfo", and on another occasion he was reported to have said "We don't need any more the central as Pasto Viejo (a mill nearby) has plenty of capacity to grind all the cane, and we intend to sell the old mill." While these remarks are not categorical statements of an intention not to reconstruct a mill on the premises, that is their obvious and natural import. Considering the entire record we cannot say that the decision of the court below was clearly erroneous on the question of fact as to whether or not the statement had been made that the mill would not be rebuilt. It follows that the finding of the District Court that such a statement was actually made, at least in substance, must stand.

The question of whether or not Nadler had authority to speak for either the Riverside Corporation or the Eastern Sugar Associates has not been pressed before us. In consequence, it suffices for us to say, without recounting the evidence in detail, that there is testimony in the record from which it might be found, as the court below apparently assumed, that Nadler had, in spite of his protestations to the contrary, authority to speak for the Associates and that this included authority to speak as well for their alter ego, the Riverside Corporation.

We come now to what the plaintiffs concede to be the "fundamental question in the case which will dispose of all others if answered in the affirmative." It is whether

or not clause four of the deed provides for a "conventional redemption", under sections 1396 and 1397 of the Civil Code of Puerto Rico. These sections, and the one referred to therein, read as follows:

"Section 1396. Conventional redemption shall take place when the vendor reserves to himself the right to recover the thing sold, with the obligation to comply with section 1407, and whatever more may have been agreed upon.

"Section 1397. The right referred to in the preceding section, in the absence of an express agreement, shall last four years counted from the date of the contract.

"Should there be an agreement, the period shall not exceed ten years."

"Section 1407. The vendor can not exercise the right of redemption without returning to the vendee the price of the sale, and furthermore:

"1. The expenses of the contract and any other legitimate payment made by reason of the sale.

"2. The useful and necessary expenses incurred by the thing sold."

According to eminent text writers on the Spanish Civil Code and to cases decided by the Supreme Court of the Philippine Islands where similar provisions are in force, it is the common practice in civil law jurisdictions for a debtor or borrower to convey his property outright to his creditor as security for the debt or loan, reserving to himself the right to repurchase the property sold for the amount of the debt or sales price. The advantages of this device are two-fold: (1) It provides a way to escape the use of the cumbersome civil law mortgage which involves much delay and great expense in case of foreclosure; (2) it provides an easy way to evade the usury laws. Consequently, in the interest of stability of land ownership and to prevent titles to land from remaining in suspense for a long period of time to the detriment of the land, Section 1397 was inserted into the civil codes of Spain, Puerto Rico, and The Philippines, as well as in those of other civil law jurisdictions. See Yadao v. Yadao, 20 Phil. Rep. 260; [3] Alano et al v. Babasa, 10 Phil.

Rep. 511, 518; Manresa (Vol. 10, p. 302, 2d Ed); Scaevola (Vol. 23 1906 Ed. p. 749).

But in spite of the wide use of the conventional redemption as a device for securing loans, we find no authority for the plaintiffs' contention that the above sections of the code are applicable exclusively to loan transactions. No such limitation is expressed in the definition of a conventional redemption in section 1396, and there are cases in which section 1397 was applied even though no loan transaction was involved. See Medel v. Francisco, 51 Phil. Rep. 367.

With this general background in mind, we can consider more intelligently the question of the applicability of sections 1396 and 1397 to the case at bar. The District Court ruled that no conventional redemption as defined in section 1396 was involved and therefore that section 1397 did not apply. The basis for this ruling was that the vendors in the 1916 deed did not "reserve" to themselves "the right to recover the thing sold," because this right was subject to a condition subsequent the happening of which was entirely within the control of the vendee and its successors. In more detail the court held "That the transaction of August 21, 1916 was in substance a sale with no right on the part of the vendor to repurchase the property at his own election but only upon the happening of something that was entirely within the control of the vendee, viz., the removal of the factory with the intention of not reconstructing it, or using the property any further for the maintenance and operation thereon of a sugar factory." Although we can find no direct authority on this point, we believe that this ruling is correct.

■ The defendants contend that the whole purpose and effect of section 1397 may be easily evaded if we accept this ruling, because "the parties might easily destroy the effect of the section by inserting suspensive conditions which would indefinitely postpone the date of redemption." But in all of the cases and texts cited by the defendants in support of their contention, it either appears or is assumed that the

---

[3] "We are of the opinion that it was the intention of the legislature to limit the continuance of such a condition, with the purpose that the title to the real estate in question should be definitely placed, it being, in the opinion of the legislature, against public policy to permit such an uncertain condition relative to the title to real estate to continue for more than ten years."

The apparent reason for this public policy is that the purchaser (creditor) being uncertain in his possession, would waste the property instead of preserving it.

right to repurchase is either suspended for a definite period of time or else is subject to a condition the happening of which is entirely within the control of the vendor. If such were the case here, we would, of course, be compelled to hold that a conventional redemption was involved and that section 1397 applied, because, as the defendants succinctly point out, the entire purpose and effect of section 1397 could otherwise be easily evaded. But in the case at bar the vendee and its successors control the length of their tenure. They may keep their title intact either by maintaining on Central Triunfo a sugar factory for grinding cane, or, in case of destruction or removal of the factory, by intending to rebuild, or even by declining to state that they do not intend to rebuild. In effect, then, the vendees have it in their power to retain undisputed title to this property indefinitely. There is nothing the vendors or their successors can do at any time to acquire the right to repurchase Central Triunfo without some action of the vendees or their successors. Being in control of the length of their tenure there would be no incentive for them to waste the property. We therefore feel that the policy behind section 1397 is not defeated when we give effect to the right to repurchase Central Triunfo reserved in clause four of the 1916 deed. Consequently we affirm the ruling of the District Court that no conventional redemption as defined in section 1396 is involved and that accordingly section 1397 is not applicable.

The District Court further held that section 1067 of the Civil Code of Puerto Rico applied. This section provides that:

"In conditional obligations, the acquisition of rights, as well as the extinction or loss of those already acquired, shall depend upon the event constituting the condition."

The defendants do not seem to dispute the pertinence of this section, but contend that if it applies, so also must section 1068, which provides in part as follows:

"Section 1068. If the fulfillment of the condition should depend upon the exclusive will of the debtor, the conditional obligation shall be void * * *."

The defendants' argument is that since the "fulfillment" of the conditions in clause four "depend upon the exclusive will of the debtor" or vendee, any obligation of the vendee to reconvey must be void under this latter section.

■ We cannot adopt this argument because we believe that section 1068 does not refer to the law of property. We believe that it was not meant to apply to a deed in which provision is made that the land conveyed shall revert to the vendor upon the happening of certain conditions, but we believe that it refers merely to ordinary contract obligations, its function being to condemn illusory promises.

"The first part of article 1115 (article 1068 of the Puerto Rican Code) insofar as it declares an obligation void which is subject to a condition which depends exclusively on the will of the debtor, conforms with the evident and simple consideration that otherwise it would be equivalent to permitting illusory obligations or going contrary to the principle of justice declared in article 1256 (article 1208 of the Puerto Rican Code) which provides that the validity of and compliance with contracts cannot be left to the will of one of the contracting parties." 8 Manresa Civil Code, 3d Ed., 134.

We therefore conclude that nothing in the Civil Code of Peurto Rico prevents the stipulations of the 1916 deed from being given effect according to their tenor.

■ The defendants finally contend that if the plaintiffs are entitled to redeem Central Triunfo, the former must be reimbursed for the cost or fair value of improvements made in good faith by defendants or their predecessors in title. Section 1407 of the Civil Code of Puerto Rico is cited as authority for this contention, but since no conventional redemption is here involved, that section cannot be applicable.

■ Section 382 of the Civil Code, also cited by defendants, deserves more careful consideration. This section applies generally to the situation presented when the right of one in possession of land is defeated by another. It provides that when one is ousted from his possession

"Necessary expenses are refunded to every possessor; but only the possessor in good faith may retain a thing until such expenses are made good to him.

"Useful expenses are refunded to the possessor in good faith with the same right of retention, it being at the option of the party who has defeated him in his possession to refund the amount of the expenses or to pay the increase in the value of the thing in consequence of such expenses."

The plaintiffs argue that the defendants cannot take advantage of this provision because the improvements, although "useful",

were not made "in good faith" for the reason that they were constructed by defendants and their predecessors with knowledge of plaintiffs' right to redeem. There is little merit in this contention. Mere knowledge by the rightful possessor and owner of land that it is subject to an uncertain right of redemption cannot affect his good faith in making improvements on the land in question. See Velazquez v. Santiago, decided by the Supreme Court of Puerto Rico on March 19, 1940, but not yet reported.

We are therefore compelled to overrule that portion of the decree of the District Court in which defendants are allowed ninety days within which to remove all improvements on Central Triunfo. In accordance with the section quoted last above we hold that the plaintiffs, before they are entitled to a reconveyance of Central Triunfo, must not only pay the original purchase price of the land itself according to their agreement, but in addition, they must also pay the necessary expenses and, as they may elect, either the amount of the useful expenses or the increase in the value of the property in consequence thereof.

Other contentions urged upon us by the defendants are of too little merit to warrant discussion.

The decree of the District Court is affirmed in part and reversed in part and the case is remanded to that court for further proceedings not inconsistent with this opinion.