# United States Court of Appeals
## For the First Circuit

No. 19-1765

FRANCISCO ALMEIDA-LEÓN; WANDA CRUZ-QUILES;
CONJUGAL PARTNERSHIP ALMEIDA-CRUZ; JUAN ALMEIDA-LEÓN,

Plaintiffs, Appellants,

TENERIFE REAL ESTATE HOLDINGS, LLC,

Plaintiff,

v.

WM CAPITAL MANAGEMENT, INC.,

Defendant, Appellee.

No. 19-1766

TENERIFE REAL ESTATE HOLDINGS, LLC,

Plaintiff, Appellant,

FRANCISCO ALMEIDA-LEÓN; WANDA CRUZ-QUILES;
CONJUGAL PARTNERSHIP ALMEIDA-CRUZ; JUAN ALMEIDA-LEÓN,

Plaintiffs,

v.

WM CAPITAL MANAGEMENT, INC.,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. John A. Woodcock, Jr.,[*] U.S. Senior District Judge]

---

[*] Of the District of Maine, sitting by designation.

Before

Howard, <u>Chief Judge</u>,
Thompson and Kayatta, <u>Circuit Judges</u>.

———————————

<u>Edilberto Berríos-Pérez</u> for appellants.
<u>Roberto E. Berríos-Falcón</u> and <u>Berríos Falcón, LLC</u> on brief
for appellant Tenerife Real Estate Holdings, LLC.
<u>Jairo A. Mellado-Villarreal</u>, with whom <u>Tessie Leal-Garabís</u>,
and <u>Mellado & Mellado-Villarreal</u> were on brief, for appellee.

———————————

March 26, 2021

———————————

THOMPSON, **Circuit Judge**.  This appeal arises from a dispute over the enforcement of a contract that controls the assignment and liquidation of several mortgage notes.  Francisco Almeida-León, his wife Wanda Cruz-Quiles, the couple's conjugal partnership, and Francisco's brother Juan Almeida-León (collectively, "the Almeidas"), initiated an action against WM Capital Management, Inc. ("WM Capital").  The complaint includes claims for redemption of property and breach of contract.  WM Capital filed a counterclaim seeking specific performance of the contract and also sought joinder of Tenerife Real Estate Holdings LLC ("Tenerife"), a signatory to the contract at issue.  The district court joined Tenerife, dismissed the claims in the Almeidas' complaint, and granted summary judgment in favor of WM Capital on its counterclaim for specific performance.  The Almeidas and Tenerife (collectively, the "appellants" where appropriate) challenge those district court orders on appeal.  We affirm.

## I. Factual and Procedural Background

We note at the outset that the procedural history of this case has many moving parts, so we beg the reader's patience as we make our way through the setup.  In 2007, an official from R-G Premier Bank of Puerto Rico ("R-G Premier") approached Francisco and Juan Almeida with a business opportunity.  A businessman named Emérito Estrada-Rivera wanted to obtain

-3-

financing from R-G Premier for his car dealership venture but was unable to obtain a loan from R-G Premier on his own. The R-G Premier official therefore suggested to Francisco and Juan that they take advantage of their strong credit to obtain a loan from R-G Premier and use the funds to provide a loan to Estrada-Rivera. In exchange, Francisco and Juan would receive interest from Estrada-Rivera, and the R-G Premier official also promised to facilitate a separate construction loan application on their behalf. Francisco and Juan agreed to this arrangement, taking out two loans from R-G Premier totaling approximately $2.6 million, and subsequently providing a loan in that amount to Estrada-Rivera.

The deal was short-lived. Estrada-Rivera defaulted on his obligations soon after the deal was finalized, which led Juan and Francisco to default on their obligations to R-G Premier. In 2011, the Almeidas brought a foreclosure action against Estrada-Rivera in Puerto Rico state court. The Almeidas obtained a judgment enabling them to foreclose on three mortgage notes that secured Estrada-Rivera's property on John F. Kennedy Avenue in San Juan ("Kennedy Notes").[1] These three mortgage notes were

_____

[1] The Almeidas originally brought a lawsuit against Estrada-Rivera in 2008 in Puerto Rico state court. Through that lawsuit the Almeidas obtained control over the Kennedy Notes. The 2011 foreclosure action involved the same Kennedy Notes. However, for reasons unclear to this Court, the named plaintiffs in the 2011 action included Francisco and his wife, Wanda, but not Juan.

-4-

subordinate to a fourth mortgage note that was originally issued to the General Motors Acceptance Corporation ("GMAC Note"). Tenerife, a corporate entity controlled by the Almeidas, later acquired the GMAC Note.

With that judgment in hand, Francisco and Juan set out to resolve the debt owed to R-G Premier. However, continuing the string of defaults, R-G Premier itself failed and in 2012 was put under the stewardship of a receiver, the Federal Deposit Insurance Corporation ("FDIC-R"). Shortly thereafter, the FDIC-R initiated an action in the U.S. District Court for the District of Puerto Rico to recoup on the loan originally made by R-G Premier.[2] The district court granted a judgment in FDIC-R's favor for $2,828,850.11 and also put in place a temporary restraining order prohibiting liquidation of the mortgage notes acquired in the Almeidas' state court action against Estrada-Rivera.[3] Negotiations ensued with the FDIC-R regarding how to satisfy the judgment for $2,828,850.11.

---

Tenerife was also not involved in that lawsuit.

[2] The lawsuit named Juan, but not Francisco, as the defendant.

[3] While the FDIC-R's judgment was against Juan, the temporary restraining order effectively halted the sale of the John F. Kennedy Avenue property and therefore tied the hands of all appellants, each of whom had an interest in notes secured by that property.

In July 2014, the FDIC-R and appellants entered into a contract entitled "Agreement to Satisfy Judgment[] and Assignment of Mortgage Notes" ("2014 Agreement"). According to the 2014 Agreement, the FDIC-R would receive "an undivided one-half interest" in the Kennedy Notes and the GMAC Note. The parties to the agreement agreed to jointly motion the state court to amend the judgment in the foreclosure proceedings against Estrada-Rivera to recognize the FDIC-R as a "co-plaintiff and judgment creditor." They also agreed that the FDIC-R would facilitate a "Phase 1 Environmental Site Assessment" of the John F. Kennedy Avenue property. Once those conditions were met, the Kennedy Notes and the GMAC Note would be liquidated through the sale of the real estate collateral. Following the liquidation, the agreement stipulated that the proceeds necessary to satisfy the judgment would first be distributed to FDIC-R and any remaining proceeds would be distributed to appellants.[4]

In December 2015, the FDIC-R sold its interest in the 2014 Agreement to WM Capital, a company based in New York. This transfer gave the Almeidas, who had been frustrated at the amount of time it was taking to liquidate the mortgage notes, what they

---

[4] Appellants disagree with certain aspects of this reading of the 2014 Agreement, and we address that issue in our analysis below.

-6-

hoped was an opportunity to reclaim full ownership of the Kennedy Notes.[5] Before the state court certified WM Capital as a substitute co-plaintiff in the Estrada-Rivera case, the Almeidas initiated the suit underlying this appeal in Puerto Rico state court alleging breach of contract and right to redemption of property. WM Capital removed the case to the U.S. District Court for the District of Puerto Rico on diversity grounds.

At the outset of the case, WM Capital successfully moved the district court to dismiss the Almeidas' right of redemption claim under Fed. R. Civ. P. 12(b)(6). The district court reasoned that the 2014 Agreement assigned only an interest in the proceeds from a liquidation of the mortgage notes, not an ownership interest in the notes themselves. As such, WM Capital's interest in the mortgage notes could not be subject to a co-ownership redemption claim.

WM Capital also filed a counterclaim against the Almeidas and Tenerife for specific performance of the 2014 Agreement, and requested that Tenerife be joined as a plaintiff under Fed. R. Civ. P. 19. The district court denied the joinder motion, finding that WM Capital had not established that Tenerife was a required plaintiff, but noted that permissive joinder under

_____

[5] Tenerife was not a named plaintiff in the original state court lawsuit underlying this appeal.

Fed. R. Civ. P. 20 might be appropriate. Accordingly, WM Capital moved the district court to join Tenerife as a plaintiff under Fed. R. Civ. P. 20. The Almeidas did not oppose this second joinder motion, and the district court summarily granted it.

WM Capital also filed two motions for summary judgment. First, WM Capital sought summary judgment on the Almeidas' breach of contract claim, which the district court granted.[6] The district court explained that the state court did not acknowledge WM Capital as a co-plaintiff and judgment creditor in the Estrada-Rivera case until after the Almeidas filed their complaint. Since WM Capital's entrance into the state court case was a condition precedent to liquidation, the district court reasoned that WM Capital could not have been the cause of a failure to liquidate the mortgage notes at the time the complaint was filed. The district court therefore granted summary judgment in WM Capital's favor on the Almeidas' breach of contract claim.

WM Capital's second motion for summary judgment addressed its claim for specific performance, the sole remaining claim in the case. Having already found the existence of a valid contract and having dismissed the Almeidas' right to redemption

---

[6] While this motion was filed prior to Tenerife's joinder, the court granted the motion approximately one year after Tenerife's joinder.

and breach of contract claims, the district court held that WM Capital was entitled to summary judgment for specific performance of the 2014 Agreement. It then entered a final judgment requiring liquidation of the three Kennedy Notes and the GMAC Note, with the proceeds first distributed to WM Capital to satisfy the $2,828,850.11 judgment resolved by the 2014 Agreement and the remaining proceeds distributed to appellants.

On appeal, appellants challenge various aspects of four district court orders and the final judgment discussed above. They contend that the district court erred when it (1) dismissed the Almeidas' right to redemption claim, (2) joined Tenerife under Fed. R. Civ. P. 20, (3) granted summary judgment in WM Capital's favor on the Almeidas' breach of contract claim, and (4) granted summary judgment in WM Capital's favor on its counterclaim for specific performance. Appellants also raise several arguments with respect to the district court's final judgment, which largely track their arguments regarding summary judgment.

## II. Analysis

Having carefully considered the record, we affirm the four district court orders and the final judgment challenged by appellants. They are addressed below in the order they were decided by the district court.

**A. Appellants' Right of Redemption Claim**

The Almeidas brought a claim against WM Capital asserting the right of redemption in property under Puerto Rico law. According to the Almeidas, they had the right to purchase WM Capital's interest in the 2014 Agreement for the price WM Capital had paid the FDIC-R.[7] The district court dismissed the right of redemption claim pursuant to Fed. R. Civ. P. 12(b)(6). We review the district court's ruling de novo, accepting all well-pleaded facts in the operative complaint and drawing all reasonable inferences in appellants' favor. Kader v. Sarepta Therapeutics, Inc., 887 F.3d 48, 56 (1st Cir. 2018).[8] As this case falls under our diversity jurisdiction, we apply the substantive law of Puerto Rico. Rinsky v. Cushman & Wakefield, Inc., 918 F.3d 8, 16 n.3

---

[7] Notably, according to the Almeidas, WM Capital obtained the FDIC-R's interest in the 2014 Agreement -- including the "undivided one-half interest" in the Kennedy Notes and the GMAC Note -- for $92,840.71. Given that the Kennedy Notes and the GMAC Note were potentially worth several million dollars, the Almeidas had a strong financial incentive to try to consolidate their interest in the 2014 Agreement by paying WM Capital the comparatively small sum of $92,840.71.

[8] We consider the text of the 2014 Agreement in reviewing the district court's order. Appellants refer to the 2014 Agreement in their briefs on appeal. Further, the 2014 Agreement is "central to" appellants' right of redemption claim and is "sufficiently referred to in the complaint." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 47 n.1 (1st Cir. 2009) (quoting Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993)).

-10-

(1st Cir. 2019) (quoting Levin v. Dalva Bros., Inc., 459 F.3d 68, 73 (1st Cir. 2006)).

The right of redemption is essentially the right to acquire property. See Baetjer v. Garzot, 124 F.2d 920 (1st Cir. 1942). Under the Civil Code of Puerto Rico, a co-owner of property may exercise the right of redemption whenever another co-owner transfers ownership to a third party. P.R. Laws Ann. tit. 31, § 3922 ("A co-owner of a thing held in common may exercise the redemption in case the shares of all the other co-owners, or of any of them, are sold to a third party."). The co-owner asserting this right must purchase the property from the third party for the amount paid by the third party plus expenses. Id. § 3912. This serves to reduce joint ownership of property, which Puerto Rico law disfavors. Ortiz Roberts v. Ortiz Roberts, 3 P.R. Offic. Trans. 876, 879 (1975).

In determining whether the right of redemption is available to appellants, we must first consider the property interest at issue. The 2014 Agreement defines the property interest purchased by WM Capital from the FDIC-R as a one-half interest in the Kennedy Notes and the GMAC Note. The 2014 Agreement does not assign WM Capital rights to the underlying real property, nor does it envision that WM Capital will hold its one-half interest in the mortgage notes indefinitely. Instead, WM

-11-

Capital's interest is limited to the proceeds from liquidation of the real property equal to the amount owed under the 2014 Agreement. This interest is described as an "assignment for payment" and requires that the parties take steps to sell the mortgaged properties at a foreclosure auction "as soon as possible." Only after the parties take these steps is the underlying debt extinguished.

We agree with the district court that this form of property assignment constitutes what is known under Puerto Rico law as a *pago por cesión de bienes* or payment by assignment of property. See P.R. Laws Ann. tit. 31, § 3179. Like the 2014 Agreement, the purpose of a *pago por cesión de bienes* is to "release[] [the debtor] from liability" through the assignment of an interest in property. Id. Also, like the 2014 Agreement, a *pago por cesión de bienes* extinguishes the debt only after the creditor collects the funds generated by the liquidation of property, with any surplus proceeds transferred back to the debtor. Trabal Morales v. Ruiz Rodríguez, 125 P.R. Dec. 340, 345 n.5 (1990).

Puerto Rico courts have not directly addressed whether a *pago por cesión de bienes* constitutes a transfer of ownership subject to the right of redemption. However, persuasive Spanish

authority holds that it does not.[9] There is no dispute that a change in property ownership is required to trigger the right of redemption. P.R. Laws Ann. tit. 31, § 3922 (allowing redemption for "[a] co-owner of a thing held in common"). And with respect to an "assignment for payment," one Spanish treatise makes clear "[t]here is no acquisition by the creditors of the ownership of the assigned property." I-2 José Puig Brutau, Fundamentos de Derecho Civil 312 (Bosch ed., 4th ed. 1988). Instead, the creditors take over the property as liquidators of the debtor's assets and with the fixed purpose of applying the amount obtained to the extinction of the debts. Id. at 313. Spanish Supreme Court precedent makes this same point. See id. at 314 (citing Spanish Supreme Court Judgment of May 11, 1912, holding that "operations . . . do not suppose a change of ownership" where the "debtor confers upon the creditors the possession and administration of the property in benefit of the transferees, and a mandate to proceed with the sale and payment of their respective credits,"

---

[9] Puerto Rico's Civil Code is "derived from Spanish law." Rivera-Colón v. AT&T Mobility P.R., Inc., 913 F.3d 200, 209 (1st Cir. 2019) (quoting Borschow Hosp. & Med. Supplies v. Cesar Castillo Inc., 96 F.3d 10, 15 (1st Cir. 1996)). Therefore, "[i]n interpreting the Civil Code of Puerto Rico . . . authoritative commentaries on analogous provisions of the Spanish Civil Code are more persuasive than common law analogies, which are inapplicable but for purpose of comparative analysis." Republic Sec. Corp. v. P.R. Aqueduct & Sewer Auth., 674 F.2d 952, 958 (1st Cir. 1982).

and citing Spanish Supreme Court Judgment of March 13, 1953, reaffirming that assignments of the right to proceeds from a sale can occur "without transmission of ownership").

Appellants do not provide any contrary Puerto Rico or Spanish authority holding that a *pago por cesión de bienes* constitutes a transfer in ownership subject to the right of redemption. Instead, appellants argue that the district court's order defined the 2014 Agreement as a trust agreement, and that property held in trust is subject to the right of redemption. There is Puerto Rico case law holding that the right of redemption applies to property held in a statutory trust. Appellants rely on Ortiz Roberts, in which the Puerto Rico Supreme Court held that where real property is held in a trust, the beneficiaries of the trust are akin to "tenants in common." 3 P.R. Offic. Trans. at 885. As such, when one beneficiary sells their share in that trust to a third party, the other beneficiaries maintain "a right and cause of action to redeem the share." Id. at 886. This result, the Puerto Rico Supreme Court reasoned, aligned with the policy behind redemption, which is "the extinction of the common ownership, or at least the reduction of the number of co-owners." Id. at 880.

The fundamental flaw in appellants' argument is that the district court never held that the 2014 Agreement creates trust

-14-

obligations, and instead explicitly rejected that argument.[10]  In fact, it likely would have been erroneous for the district court to have held that the 2014 Agreement created a trust.

Trusts in Puerto Rico are governed by the Trust Act, Act No. 219 of August 31, 2012, P.R. Laws Ann. tit. 32, §§ 3351 et seq.[11]  The 2014 Agreement does not comply with the statutory requirements for creating a trust.  It does not include an express statement of the parties' intention to create a trust -- a key requirement under the Trust Act.  See P.R. Laws Ann. tit. 32, §§ 3352, 3352a (stating that, among other requirements, "[t]he trust instrument shall specify . . . the express statement of the intention to create said trust").  The 2014 Agreement is also missing other statutorily required information.  See id. §§ 3352a

---

[10] According to the Almeidas, the district court found that "the Agreement created a trust and held that, under the laws of Puerto Rico, redemption does not apply to participants in a trust."  That is not accurate.  The district court considered the Almeidas' argument that the 2014 Agreement created trust obligations and summarily rejected it.  Appellants do not actually challenge that finding before this Court, but rather recast the district court's order to suit their purposes and argue that Ortiz Roberts applies to that alternative rendition.

[11] Prior to the enactment of the Trust Act, trusts were governed by the provisions of Sections 834 through 874 of the Puerto Rico Civil Code, which have since been repealed.  See Section 71 of Act No. 219 of August 31, 2012, codified at P.R. Laws Ann. tit. 31, § 2541.

(requiring that the "[t]he trust instrument" specify "the name of the trust being created"; "the designation of the person who may include other assets in the trust . . . and the manner in which such other assets may be included"; and "the full and clear designation of the trustor, the trustee, and the beneficiary or substitutes thereof," among other information). Furthermore, it was not constituted through a deed. See id. § 3352 (requiring that a trust be created "through a deed"). Nor are there any well-pleaded facts in the second amended complaint (or even elsewhere in the record) that the alleged "trust" was recorded in the Special Trust Registry, that all statutory requirements related to the recordation were complied with, and that the execution of the trust was timely notified to the Notarial Inspection Office. See id. § 3351d (stating that, once constituted, the trust "shall be recorded in the Special Trust Registry," where the "deed number and name of the notary before whom it was executed," among other information, shall be stated); id. (requiring that "[t]he notary before whom the trust instrument was executed . . . notify the same to the Notarial Inspection Office not later than the first ten days of the month following the execution thereof"). Because the 2014 Agreement does not comply with these statutory requirements, any "trust" created under the agreement would be

null.  See id. § 3351d (stating that if the statutory requirements are not met, the trust will be deemed null).

Ortiz Roberts is therefore not binding in this case. Moreover, we find that the policy goal addressed by Ortiz Roberts -- reducing joint ownership of property through application of the right of redemption -- does not apply with equal force here. Unlike the trust at issue in Ortiz Roberts, the 2014 Agreement operates to liquidate the underlying property "as soon as possible" with the end result of extinguishing joint ownership.  The 2014 Agreement therefore does not raise the same concerns with respect to perpetuating joint ownership that the Puerto Rico Supreme Court addressed in Ortiz Roberts.

In sum, we find that the 2014 Agreement is a *pago por cesión de bienes* that does not constitute a change in ownership subject to the right of redemption.  Moreover, the 2014 Agreement did not create a trust and this case does not raise the same policy concerns with respect to joint ownership addressed in Ortiz Roberts.  The district court's dismissal of appellants' right of redemption claim is affirmed.

**B. Joinder of Tenerife under Fed. R. Civ. P. 20**

Appellants challenge the district court's joinder of Tenerife into this litigation.[12] The majority of their arguments focus on how Tenerife was not an "indispensable" party under Fed. R. Civ. P. 19. Those arguments are of no consequence, however, because the district court denied WM Capital's joinder motion brought pursuant to Fed. R. Civ. P. 19 and instead joined Tenerife pursuant to Fed. R. Civ. P. 20. Appellants offer two additional, highly abbreviated arguments against joinder, claiming that the district court lacked subject matter jurisdiction and that joinder violated Tenerife's due process rights. While we typically review a district court's joinder decision for abuse of discretion, Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008), we review questions of law de novo, Román-Cancel v. United States, 613 F.3d 37, 41 (1st Cir. 2010). We find appellants' arguments unpersuasive and, with respect to the due process issue, insufficiently developed to warrant further review. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal

---

[12] WM Capital argues that the Almeidas lack standing to raise joinder-related arguments on Tenerife's behalf and that the Almeidas forfeited these arguments by failing to object to joinder before the district court. Given that we find the same arguments raised by Tenerife fail, we need not resolve these standing and forfeiture issues with respect to the Almeidas.

-18-

way, leaving the court to do [the] work, create the ossature for the argument, and put flesh on its bones.").

Appellants first argue that the dispute between WM Capital and Tenerife is "fictitious" such that the district court lacked subject matter jurisdiction. Appellants assert that WM Capital, by joining Tenerife as a plaintiff, is "suing itself on behalf of Tenerife, creating a fictitious controversy on the pleadings." Appellants do not develop this point further, leaving this Court largely to speculate how Tenerife's joinder raises subject matter jurisdiction concerns.[13] While the briefs are not helpful in making clear their point, we are mindful that federal courts have sua sponte recognized that they lack jurisdiction "when the controversy is no longer 'live' or the parties 'lack a legal[ly] cognizable interest in the outcome,'" Shelby v. Superformance Int'l, Inc., 435 F.3d 42, 45 (1st Cir. 2006) (quoting Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 64 (1st Cir. 2002)), and have accordingly dismissed such claims. If this is the challenge appellants are attempting to make, they cannot succeed. The disputes in this case are neither dead nor lacking an outcome-interested litigant. Most notably here, WM Capital filed a

---

[13] This Court has an independent duty to assess the existence of subject matter jurisdiction. Espinal-Domínguez v. Puerto Rico, 352 F.3d 490, 495 (1st Cir. 2003).

counterclaim alleging that Tenerife breached the 2014 Agreement, and Tenerife filed an answer to that counterclaim denying the allegations and asserting affirmative defenses. These pleadings evidence an active dispute as to the proper operation of the 2014 Agreement, and appellants' arguments fail to provide an identifiable basis for labeling this dispute as "fictitious." Seeing no such basis on our own review,[14] appellants' arguments regarding subject matter jurisdiction fail.

Appellants next argue that Tenerife's joinder deprived Tenerife of due process, because it occurred after the district court already ruled on several issues in this case. Joining a party in the middle of litigation is not inherently impermissible, and there are some instances where even post-judgment joinder is appropriate. See Perry v. Blum, 629 F.3d 1, 16–17 (1st Cir. 2010). We must therefore look to appellants for an explanation of why they deem the process in this particular case insufficient. Id. In doing so, appellants must demonstrate that the lower court failed to "comport with the strictures of due process," such as by failing to provide "notice" or "an opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 16.

---

[14] We note that the district court persuasively addressed other challenges to subject matter jurisdiction below, and appellants have not raised specific challenges to the district court's reasoning on those points.

Generally, appellants must demonstrate that this alleged lack of process caused "prejudice," such that the "abridgement of due process is likely to have affected the outcome of the proceedings." Amouri v. Holder, 572 F.3d 29, 36 (1st Cir. 2009) (quoting Pulisir v. Mukasey, 524 F.3d 302, 311 (1st Cir. 2008)).

In this endeavor we find appellants' arguments entirely lacking. As to whether the district court failed to provide sufficient process in deciding to join Tenerife as a plaintiff, appellants' arguments are highly abbreviated and contain factual misstatements.[15] Moreover, on the issue of prejudice, there is no explanation for how the district court's joinder decision was "likely to have affected the outcome of the proceedings." Id. at 36. Lastly, but importantly, appellants' opening briefs are unaccompanied by a single citation to legal authority addressing the issue of joinder and due process. More is required on an appeal to this Court. Fed. R. App. P. 28(a)(8)(A) (appellant's

---

[15] For instance, appellants allege that the district court permitted WM Capital to "select[]" Tenerife's complaint, causes of action, and the requested remedy. This is not accurate -- the district court merely granted WM Capital's joinder motion, and Tenerife did not subsequently seek to assert claims on its own behalf. Appellants also allege that Tenerife was "never notified" of this litigation. Of course, Tenerife was joined into the litigation and at that point was on notice of the proceedings. But moreover, given that the Almeidas initiated this litigation and also created and exert control over Tenerife, the notion that this litigation was proceeding totally unbeknownst to Tenerife is specious at best.

-21-

brief "must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); cf. Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988) (a litigant must "spell out its arguments squarely and distinctly" and may not present an argument "bereft of meaningful citation to authority").  Under these circumstances, we find that appellants' due process arguments must fail.  Zannino, 895 F.2d at 17 (an argument is "waived" if "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation").

## C. Appellants' Breach of Contract Claim

Appellants argue that the district court erroneously dismissed their breach of contract claim on summary judgment and prior to sufficient discovery.  The Almeidas' second amended complaint alleged that the FDIC-R breached the 2014 Agreement. The FDIC-R purportedly failed to promptly conduct an environmental impact study, resulting in a delay in the liquidation of the mortgage notes.  According to the complaint, this delay continued "until the commencement of the present case" on January 22, 2016. The delay, say the appellants, constituted a contract breach that caused them damages, a disputed issue that should have been left to a jury to decide.

The district court saw things differently and held that the breach of contract claim failed as a matter of law. We review that determination de novo, construing the record in the light most favorable to appellants and resolving all reasonable inferences in their favor. Miller v. Sunapee Difference, LLC, 918 F.3d 172, 176 (1st Cir. 2019). For the reasons below, we affirm.

Under Puerto Rico law, "[w]here the terms of a contract are clear, leaving no doubt as to the contracting parties' intentions, such contract will be observed according to 'the literal sense of its stipulations.'" Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 31 (1st Cir. 2012) (quoting P.R. Laws Ann. tit. 31, § 3471). With respect to appellants' claim that WM Capital is responsible for a delay in the property sale, the relevant contractual provisions are clear. The 2014 Agreement requires a foreclosure sale and liquidation of the associated mortgage notes "as soon as possible." However, there are conditions precedent to that sale and liquidation. One condition is that the Puerto Rico state court must first amend its judgment in the Estrada-Rivera case to recognize the FDIC-R as a "co-plaintiff and judgment creditor." Another condition is that the FDIC-R must facilitate an environmental site assessment. The fulfillment of both conditions is required prior to sale.

-23-

Based on this straightforward reading of the 2014 Agreement, we find that the district court properly dismissed appellants' breach of contract claim. A cognizable claim for breach of contract under Puerto Rico law requires sufficient allegations of a breach of the contractual terms and that the breach caused an identifiable harm. Mattei Nazario v. Vélez & Asociados, 145 P.R. Dec. 508 (1998) (a breach of contract claim arises "when the breach of a contractual obligation causes harm to any of the contracting parties"). In this case, the 2014 Agreement only allowed the parties to move forward with the property sale after the state court amended its judgment. Therefore, the breach alleged by appellants (a delay in conducting the environmental impact study) could only have caused the alleged harm (a delay in the sale of the properties), at the earliest, starting on February 11, 2016, when the state court amended its judgment. Problematically for appellants, the operative complaint does not allege that the FDIC-R caused a delay that extended to February 11, 2016, or beyond. Instead, the complaint alleges actions that delayed the sale up until "the commencement of the present case," which occurred on January 22, 2016.

Simply put, delaying the sale of property through January 22, 2016, could not have caused the harm alleged by appellants where the sale of property was prohibited prior to

February 11, 2016, in any event. The Almeidas could have sought to supplement their complaint, if appropriate, to include allegations that the FDIC-R caused a delay beyond February 11, 2016. See Fed. R. Civ. P. 15(d). But no such supplemental complaint was filed. Instead, the second amended complaint, filed on May 10, 2016, maintained that the FDIC-R's failure to conduct an environmental impact study caused a delay in the property sale only through January 22, 2016. The breach of contract claim therefore fails to allege a plausible theory of liability, and this failure provides a sufficient basis to affirm the district court's dismissal of that claim. See RSA Media, Inc. v. AK Media Grp., Inc., 260 F.3d 10, 16 (1st Cir. 2001) (summary judgment appropriate absent a plausible theory of causation and evidence thereof).

**D. WM Capital's Specific Performance Claim and the Final Judgment**

The last challenge brought by appellants is to the district court's grant of summary judgment in favor of WM Capital on its claim for specific performance. WM Capital's specific performance claim alleged that the 2014 Agreement requires the liquidation of both the Kennedy Notes and the GMAC Note with the funds stemming from that liquidation paid first to WM Capital. WM Capital moved for summary judgment, which the district court

-25-

granted. The district court thereafter entered a final judgment requiring appellants to comply with the 2014 Agreement as interpreted by the district court. Appellants single out the GMAC Note and primarily argue that the district court erred in holding that the 2014 Agreement unambiguously requires its liquidation with the resulting proceeds going first to WM Capital. They argue they should have been afforded a trial to resolve whether the court's understanding of the agreement is correct.[16] For the reasons below, we affirm the district court's decision.

In addressing this issue, the district court first determined that the 2014 Agreement was unambiguous as to the

---

[16] As the district court observed below, appellants have not pointed to any specific contract language that they claim is ambiguous such that a trial is necessary. On appeal, appellants continue to provide little explanation of what ambiguity in the 2014 Agreement must be resolved at trial. The Almeidas' brief does not argue any specific portion of the 2014 Agreement is ambiguous, and Tenerife's argument on this point is sparse. Tenerife correctly observes that there is a disagreement between appellants and WM Capital as to whether the GMAC Note is governed by the 2014 Agreement. According to Tenerife, the district court "should have considered [this disagreement] to be sufficient to establish a material controversy of an essential fact since the terms of the Agreement are then ambiguous enough to deny summary judgment and proceed with a trial on the merits to present evidence as to the intent of the parties." As best we can understand, Tenerife is arguing that the parties' disagreement as to the requirements of the 2014 Agreement demonstrates that the 2014 Agreement must be ambiguous. As we explain, because we find no ambiguity in the relevant sections of the 2014 Agreement, this argument must fail.

handling of the GMAC Note. According to the district court, the plain language of the contract assigned to the FDIC-R an undivided one-half interest in the "Kennedy Notes" and the "GMAC Note."[17] Further, the parties agreed to facilitate a liquidation of the mortgage notes through a sale of the underlying properties, with the proceeds of the sale going first to FDIC-R to satisfy its judgment against appellants.[18] Appellants, including Tenerife (the

---

[17] Paragraph 3.1.2 reads:

Borrower, Co-Holders and Tenerife hereby assign to the FDIC-R, as of the Effective Date of this Agreement, an undivided one-half interest in each of the Kennedy Notes, GMAC Note, and GMAC Judgment. The Kennedy Notes and GMAC Note will be consigned by the FDIC-R, Co-Holders and Borrower to the State Court in the Foreclosure Action as of the date of the execution of this Agreement until: (i) the sale of Kennedy Property, (ii) termination of this Agreement under Section 3.2 below, (iii) or cancellation of the Kennedy Notes and GMAC Notes. While the Kennedy Notes and GMAC Note are consigned to the State Court, the Parties and any potential purchaser of the Kennedy Property accompanied by one or more of the Parties may obtain access to inspect such notes.

[18] Paragraph 3.1.3 reads:

To evidence the FDIC-R's one-half interest in the Kennedy Notes given as assignment for payment ("Dación o Cesión para Pago"), the Parties will immediately file in the Foreclosure Action a joint motion, in the form attached hereto as Exhibit 1, requesting that the judgment entered in that case be amended to include FDIC-R as co-plaintiff and judgment creditor. As soon as such amended judgment is entered, the Parties, subject to Section 3.2 below, will seek without delay and use their best efforts to conduct the Foreclosure Auction as soon as possible.

entity that controls the GMAC Note), signed the 2014 Agreement. As such, appellants agreed that they had read the agreement, understood its contents, and were entering into it voluntarily.[19]

Relying on this reading of the 2014 Agreement, and having already dismissed appellants' causes of action, the district court explained why specific performance was warranted. This task was not a heavy lift. As noted by the district court, Puerto Rico law provides for specific performance of a valid contract. See P.R. Laws Ann. tit. 31, § 3052. The district court therefore granted summary judgment in favor of WM Capital and entered a final judgment that tracked the terms of the 2014 Agreement. The final judgment required appellants to take steps "to foreclose on the

_____

Paragraph 3.1.7 reads, in relevant part:

> In the event that a third party purchases the Kennedy Property at the Foreclosure Auction for the Minimum Bid Amount, the proceeds of such sale up to the full amount of the Judgment will be immediately paid first to the FDIC-R as full satisfaction of the Judgment. FDIC-R will then deliver or otherwise assign, as necessary, any excess sale proceeds to Borrower and Co-Holders.

[19] Paragraph 3.3 reads, in relevant part:

> The Parties each represent and warrant that it has read this Agreement and knows and understands its contents fully and has voluntarily executed this Agreement after having had the opportunity to consult with counsel of their choosing, and without being pressured or influenced by any representation of any person acting on behalf of either party.

four mortgage notes identified in paragraph 3.1.2 of the Agreement," including the GMAC Note, "and sell the encumbered Kennedy property via public auction as provided for under the Agreement." Further, as required by paragraph 3.1.3 of the 2014 Agreement, WM Capital was given first priority in payment from the proceeds of the sale.

Upon our own review, we agree with the district court's interpretation of the relevant contract language. In short, the 2014 Agreement, to which Tenerife is a signatory, clearly contemplates the liquidation of both the Kennedy Notes and the GMAC Note with first priority from the proceeds going to WM Capital. In the absence of any ambiguity in the terms of the 2014 Agreement, the district court properly enforced its plain meaning at summary judgment. Torres Vargas v. Santiago Cummings, 149 F.3d 29, 33 (1st Cir. 1998); see also Vulcan Tools of P.R. v. Makita USA, Inc., 23 F.3d 564, 567 (1st Cir. 1994) ("When an agreement leaves no doubt as to the intention of the parties, a court should not look beyond the literal terms of the contract." (citing Marina Indus. Inc. v. Brown Boveri Corp., 114 P.R. Dec. 64, 72 (1983))). Furthermore, given the clear language of the 2014 Agreement, and having already affirmed the district court's dismissal of appellants' claims, we find that the district court properly

ordered specific performance of the terms of that contract.  See

P.R. Laws Ann. tit. 31, § 3052.[20]

---

[20] Appellants make several other arguments, none of which merits substantial discussion.  Appellants claim that WM Capital failed to file a sworn statement with its summary judgment motion. But this is of no consequence, as the question before the district court was one of contract interpretation, and the parties both submitted identical copies of the 2014 Agreement.  Appellants also make the sweeping claim that the district court erred when it "decided every factual issue."  However, appellants neither identify the specific factual disputes allegedly resolved in error nor explain how those factual disputes are "material" to WM Capital's specific performance claim.  Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010) (facts are "material" only if they have "the potential to change the outcome of the suit").  Appellants next argue that the district court did not properly account for the "deceit" and "fraud" allegedly committed by WM Capital.  But as the district court noted below, appellants have not identified any record evidence to support this allegation, and this fact alone dooms appellants' argument under Puerto Rico law.  See Citibank Glob. Mkts., Inc. v. Rodríguez Santana, 573 F.3d 17, 29 (1st Cir. 2009) (Puerto Rico law presumes "good faith" by contracting parties and therefore requires a party seeking to invalidate a contract based on contractual deceit to "rebut the presumption of good faith with evidence of intentional fault or bad faith").  Lastly, appellants attack the district court's final judgment.  These arguments largely track appellants' attacks on the district court's summary judgment decision, and they fail for the same reasons.  Additionally, appellants had the opportunity to object to the final judgment before the district court and failed to do so.  Appellants are therefore prohibited from raising these objections on appeal.  Rockwood v. SKF USA Inc., 687 F.3d 1, 9 (1st Cir. 2012) ("Our case law is clear that 'arguments not raised in the district court cannot be raised for the first time on appeal.'" (quoting Sierra Club v. Wagner, 555 F.3d 21, 26 (1st Cir. 2009))).

## III. Conclusion

For the reasons stated above, we disagree with appellants' challenges to the district court orders and final judgment.  We affirm.

We deny WM Capital's motion for sanctions.  All other pending motions are denied as moot.