# United States Court of Appeals
## For the First Circuit

No. 20-1445

BAUTISTA CAYMAN ASSET COMPANY,

Plaintiff, Appellee,

v.

ASOCIACION DE MIEMBROS DE LA POLICIA DE PUERTO RICO, a/k/a La
Asociación de Miembros de la Policía de Puerto Rico,

Defendant, Appellant,

UNITED STATES,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before

Kayatta, Lipez, and Barron,
Circuit Judges.

Mauricio O. Muñiz-Luciano, with whom Karena Montes-Berríos,
Ignacio J. Labarca-Morales, and Marini Pietrantoni Muñiz LLC were
on brief, for appellee.
Iván Díaz López, with whom Lex Services PSC was on brief, for
appellant.

October 29, 2021

**BARRON**, **Circuit Judge**. This appeal stems from litigation concerning a loan agreement in the District of Puerto Rico in which the District Court granted summary judgment to the plaintiff on its Puerto Rico law claims and dismissed the defendant's Puerto Rico law counterclaims for failure to state a claim. The appeal presents issues relating both to the federal courts' subject matter jurisdiction and to matters of Puerto Rico law. We affirm.

## I.

The following facts are undisputed on appeal. The plaintiff-appellee, Bautista Cayman Asset Company ("Bautista"), is incorporated in the Cayman Islands and wholly owned by Bautista Cayman Holding Company. The defendant-appellant, Asociación de Miembros de la Policía de Puerto Rico ("AMPPR"), is a private, non-profit Puerto Rico corporation that provides services for members of the Puerto Rico Police Department.

In May of 2007, AMPPR executed a loan agreement with a third party, Doral Bank, for the principal amount of $3,000,000. AMPPR pledged as collateral for the loan a parcel of land on which its headquarters are located.

Nearly a decade later, in February 2015, the Puerto Rico Office of the Commissioner of Financial Institutions named the Federal Deposit Insurance Corporation ("FDIC") the receiver for

Doral Bank. About two years after that, AMPPR defaulted on its obligations under the loan agreement.

Following the default, Bautista brought this suit on February 6, 2017, against AMPPR in the United States District Court for the District of Puerto Rico. Bautista alleged in its complaint that it was the successor-in-interest to the loan agreement between AMPPR and Doral Bank and that AMPPR breached that agreement by "failing to pay principal and interest due under" it.

Bautista's complaint asserted two claims against AMPPR under Puerto Rico law: collection of monies (Count I) and foreclosure of collateral (Count II). Bautista requested that AMPPR pay "the full amounts owed" under the loan agreement, and, "in the absence of payment in full," it sought to foreclose upon the property that AMPPR had used as collateral for the loan.

Bautista's complaint also named the United States as a defendant pursuant to 28 U.S.C. § 2410.[1] The complaint did so because it alleged that the United States "has recorded junior liens" in the amounts of $23,105.19 and $5,527.73 "affecting the real property object of this mortgage foreclosure [action]."

_____

[1] This statute provides that "the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter . . . to quiet title to [or] . . . to foreclose a mortgage or other lien upon . . . real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a).

- 4 -

The complaint alleged that the District Court had subject matter jurisdiction under 28 U.S.C. § 1332(a). The complaint alleged that this was so "because there is complete diversity of citizenship between" Bautista, "a Cayman Islands corporation," and AMPPR, "a non-profit corporation organized under the laws of the Commonwealth of Puerto Rico."

On May 28, 2017, AMPPR moved to dismiss Bautista's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The accompanying memorandum of law contended that the District Court lacked diversity jurisdiction under § 1332(a) because AMPPR is a citizen of Puerto Rico and Bautista's "principal place of business is in Puerto Rico," such that both AMPPR and Bautista "have the same citizenship." AMPPR also moved at that time for jurisdictional discovery so that it could "further substantiate [its] motion" to dismiss for lack of subject matter jurisdiction by probing the allegation in Bautista's complaint that its "principal place of business is Fort Worth, Texas" and not Puerto Rico.

The District Court denied both motions in a July 18, 2018 order. The District Court explained that Bautista, in opposing AMPPR's motions, had submitted an uncontradicted affidavit and other evidence that "established that there is complete diversity between the parties."

Thereafter, on August 2, 2018, AMPPR filed an answer to Bautista's complaint that also asserted three counterclaims for which AMPPR sought various forms of equitable relief as well as damages against Bautista. Bautista moved to dismiss AMPPR's counterclaims on September 24, 2018, and had previously moved on January 19, 2018, for summary judgment in its favor as to the collection of monies and foreclosure of collateral claims set forth in its complaint.

The District Court granted Bautista's motion to dismiss AMPPR's counterclaims on January 9, 2020. See Bautista Cayman Asset Co. v. Asociacion de Miembros de la Policia de P.R., Civ. No. 17-1167CCC, 2020 WL 119688, at *3 (D.P.R. Jan. 9, 2020). The District Court also granted Bautista's motion for summary judgment on February 5, 2020, to the extent that Bautista sought judgment in its favor on its collection of monies and foreclosure of collateral claims against AMPPR. However, the District Court explained, it was denying Bautista's motion for summary judgment to the limited extent that the motion also sought "to extinguish the United States' junior liens on the mortgaged property" because, in its view, Bautista's motion was "not the correct procedural vehicle to extinguish said liens."

The District Court entered judgment against AMPPR and in favor of Bautista on February 5, 2020, and AMPPR timely appealed.

**II.**

We begin with two jurisdictional questions that, following oral argument, we asked the parties to address in supplemental briefing. Having now reviewed their submissions, we conclude that there is no jurisdictional problem on either front.

The first question concerns our appellate jurisdiction, which is limited to review of "final decisions of the district courts." 28 U.S.C. § 1291; see DeCambre v. Brookline Hous. Auth., 826 F.3d 1, 6-7 (1st Cir. 2016) ("Although neither party contests this court's jurisdiction, 'an appellate court has an unflagging obligation to inquire sua sponte into its own jurisdiction,' including its appellate jurisdiction." (quoting Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Colombani, 712 F.3d 6, 10 (1st Cir. 2013)). This question arose because, at the time of AMPPR's filing of a notice of appeal, the District Court had declined to resolve Bautista's claim regarding the United States' junior liens on the mortgaged property at issue. See Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities."). But, after we requested supplemental briefing, Bautista moved before the District Court to voluntarily

dismiss the United States due to the Internal Revenue Service's cancellation of its junior liens on the mortgaged property.[2] The District Court granted that motion and dismissed the United States with prejudice. See Bautista Cayman Asset Co. v. AMPPR, No. 3:17-cv-01167 (D.P.R. Aug. 20, 2021), ECF No. 94. Thus, in accord with Ramos-Santiago v. WHM Carib, LLC, 919 F.3d 66, 70 (1st Cir. 2019) (quoting Clausen v. Sea-3, Inc., 21 F.3d 1181, 1185 (1st Cir. 1994)), we understand the AMPPR's prematurely-filed notice of appeal to have "relate[d] forward" to the date of the district court's dismissal of the United States. Accordingly, we have appellate jurisdiction to hear this case under 28 U.S.C. § 1291.

The second question concerns the District Court's subject matter jurisdiction at the time that it granted summary judgment against AMPPR. Bautista had pled diversity as the jurisdictional basis for suit, see 28 U.S.C. § 1332. As a general matter, the presence of the United States as a party destroys diversity jurisdiction, because the United States is not a citizen of any State under 28 U.S.C. § 1332. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68, 2 L.Ed 435 (1806); In re Olympic Mills Corp., 477 F.3d 1, 6 (1st Cir. 2007) ("In cases involving

---

[2] See Pl.'s Mot. for Voluntary Dismissal, No. 3:17-cv-01167(D.P.R. Aug. 13, 2021), ECF No. 91, at 2 ("Recently, Bautista obtained a revised title study of the Property subject to foreclosure in this case. Through it, Bautista learned that the U.S. Liens were released by the Internal Revenue Service, on July 11, 2018, and October 19, 2016, respectively.").

multiple plaintiffs or defendants, the presence of but one nondiverse party divests the court of original jurisdiction over the entire action."); see also Am. Nat'l Bank & Tr. Co. of Chi. v. Sec'y of Hous. & Urb. Dev., 946 F.2d 1286, 1291 (7th Cir. 1991) (noting that diversity jurisdiction is undermined by the presence of the United States, because "the United States is not a citizen of a state for diversity purposes").

But, even if we assume that the United States was still a party in more than name at the time that the District Court entered summary judgment against Bautista, notwithstanding that the Internal Revenue Service had by then cancelled both of the liens at issue in this case, but cf. Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), we are confident that the District Court still had subject matter jurisdiction over the case at the time for the reasons well explained in Pacific Mutual Life Insurance Co. v. American National Bank & Trust Co. of Chicago, 642 F. Supp. 163, 166-68 (N.D. Ill. 1986). See also Koppers Co., Inc. v. Garling & Langlois, 594 F.2d 1094, 1097 n.1 (6th Cir. 1979). We thus proceed to AMPPR's contentions on appeal.

### III.

AMPPR first contends that the District Court "committed an abuse of discretion" when it denied AMPPR's motion for

- 9 -

jurisdictional discovery because the District Court "ignor[ed]" one of the arguments that AMPPR says it pressed in support of that motion.[3]  In particular, AMPPR contends that its motion for jurisdictional discovery asserted that Bautista was not "the true owner of the credit object of collection" (i.e., the loan agreement that AMPPR had initially executed with Doral Bank) and that the District Court failed to recognize that AMPPR "had a right to conduct discovery . . . to ascertain whether or not [Bautista] was indeed the true owner of the credit object . . . or was merely posing as the owner."

AMPPR based its motion for jurisdictional discovery, however, solely on the contention that there was a "'colorable case' or 'prima facie case' that diversity jurisdiction does not exist."  It thus asked the District Court only "to allow[] jurisdictional discovery in order to further contest[] [Bautista's] claim for diversity."  As Bautista rightly argues, AMPPR made no reference in that filing to the argument that it now asserts that the District Court overlooked in denying that motion. Nor did AMPPR assert that argument in its motion to dismiss, beyond an unadorned, stray reference to Bautista's standing."  Because we can hardly say that it was "plainly wrong," Me. Med. Ctr. v. United

---

[3] AMPPR develops no argument to the effect that its motion to dismiss for lack of subject matter jurisdiction should have been granted even if its motion for jurisdictional discovery was properly denied.

States, 675 F.3d 110, 119 (1st Cir. 2012) (quoting Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008)), and "an abuse of the district court's broad discretion," id., for the District Court not to have considered an argument that Bautista did not make, see United States v. Laureano-Salgado, 933 F.3d 20, 26 n.10 (1st Cir. 2019) (noting "the baseline rule 'that theories not raised squarely in the district court cannot be surfaced for the first time on appeal'" (quoting McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991))), we reject this aspect of AMPPR's challenge.

To the extent that AMPPR means also to contend that Bautista lacks standing to sue because it is not the "true owner of the credit object," see Hochendoner v. Genzyme Corp., 823 F.3d 724, 732 (1st Cir. 2016) (discussing "[t]he requirement that a plaintiff must adduce facts demonstrating that he himself is adversely affected" by the defendant's conduct), that attempt likewise fails. Bautista alleged in its complaint that it was the successor-in-interest to the loan agreement between AMPPR and Doral Bank. Bautista also appended to its complaint versions of FDIC-stamped and signed documents that indicated that AMPPR's obligations under the loan agreement were to be "[p]a[id] to the order of Bautista Cayman Asset Company." AMPPR did not challenge below in moving for jurisdictional discovery or in its motion to dismiss either Bautista's allegation that it was the successor-in-interest to Doral Bank or the authenticity of the appended

- 11 -

documents. The District Court then supportably found at summary judgment that "[t]he relevant loan agreement[] . . . [was] . . . acquired by Bautista," after Bautista's statement of material facts likewise went unchallenged by AMPPR, and after AMPPR in opposing Bautista's motion for summary judgment appears to have conceded that Bautista "acquired the mortgage loan over defendant's property." See CMI Cap. Mkt. Inv., LLC v. González-Toro, 520 F.3d 58, 61, 63 (1st Cir. 2008) (explaining that when a defendant "fail[s] to challenge [the] plaintiff['s] statement of material facts in support of a motion for summary judgment," the "district court . . . [i]s within its discretion to deem the facts in the statement of material facts admitted").

**IV.**

AMPPR's remaining contentions on appeal pertain to the District Court's dismissal of one of its counterclaims -- namely, the one that AMPPR referred to in its answer as, simply, "remedy at equity." AMPPR alleged in support of that counterclaim that Doral Bank had contributed to precipitating the economic crisis of 2008 and that the crisis, in turn, significantly diminished the value of AMPPR's collateral property. AMPPR further alleged in support of that same counterclaim that Bautista had purchased the loan agreement from the FDIC (which the FDIC had acquired from Doral Bank) "for a substantial discount" of somewhere "between 7% to 20% of the . . . face value and/or [the] outstanding balance

due."  AMPPR sought relief on this counterclaim in the form of an order limiting the amount that Bautista could recover from AMPPR under the loan agreement.

The District Court characterized AMPPR's "remedy at equity" counterclaim as a "request[] that the Court exercise its equitable powers to limit Bautista's recovery under the doctrine[s] of unjust enrichment and/or rebus sic stantibus." Bautista Cayman, 2020 WL 119688, at *2.  The District Court dismissed the counterclaim based in part on Puerto Rico Telephone Co. v. SprintCom, Inc., 662 F.3d 74 (1st Cir. 2011).

AMPPR contends that the District Court erred in doing so because SprintCom "wrongfully interpreted the extent of the civil-law-equity powers under Puerto Rico law" by ruling that such powers do not allow "a court [to] modify the terms of a contract."  We disagree that the District Court erred.

AMPPR fails to make any argument as to why we are not bound by the law-of-the-circuit doctrine to adhere to SprintCom. See United States v. Lewko, 269 F.3d 64, 66 (1st Cir. 2001) ("According to the 'law of the circuit' doctrine, a prior panel decision [generally] shall not be disturbed . . . .").  Moreover, SprintCom expressly recognized that "the Puerto Rico Supreme Court [has] exercised [equitable] power to revise an agreement," 662 F.3d at 98 (citing Util. Consulting Servs., Inc. v. Municipality of San Juan, 15 P.R. Offic. Trans. 120 (1984)), and the District

- 13 -

Court relied on SprintCom only for the specific proposition that "the doctrine of unjust enrichment does not apply where . . . there is a contract that governs the dispute at issue," Bautista Cayman, 2020 WL 119688, at *2 (omission in original) (quoting SprintCom, 662 F.3d at 97). AMPPR does not develop any argument as to why that proposition specifically covering unjust enrichment is incorrect.

AMPPR does also contend that the District Court erred in denying AMPPR the relief it sought on this counterclaim pursuant to the doctrine of rebus sic stantibus. The rebus sic stantibus doctrine, as the District Court explained, permits the judicial modification of a contract under Puerto Rico law "as an exceptional remedy to extraordinary circumstances," which "is conditioned on the presence of [several] elements." Bautista Cayman, 2020 WL 119688, at *2; see Banco Popular v. Sucesión Talavera, 174 P.R. Dec. 686, 707 n.14 (2008) (certified translation at 15 n.14).[4] The Supreme Court of Puerto Rico has described those elements as:

> 1. The basic one of [un]foreseeability [of an event] which implies a question of fact depending on the conditions which concur in each case.
> 2. An extraordinary difficulty must be produced, a worsening of the conditions of performance, in such a manner that [performance] becomes much more onerous to the debtor . . . .

---

[4] The citations to Sucesión Talavera are to the certified translation filed by AMPPR at Docket No. 16, Addendum Exhibit 6.

- 14 -

3. That risk has not been the determining motive of the contract, as would happen in the case of an aleatory contract.

4. That there is no fraud by either of the parties . . . .

5. That it is a successive contract or it is referred to a moment in the future, in such a way that it has some duration, because the problem does not exist in contracts of instantaneous performance or those that have already been performed.

6. That the alteration of the circumstances is subsequent to the execution of the contract (because that is what the nature of the unforeseen event demands) and [that] it has a certain permanence (an element that is also demanded by the extraordinary character required of the alteration).

7. That there is a petition from an interested party.

Sucesión Talavera, 174 P.R. Dec. at 707 n.14 (certified translation at 15 n.14) (quoting Casera Foods, Inc. v. E.L.A., 8 P.R. Offic. Trans. 914, 920-21 (1979)).

AMPPR contends that the District Court in finding no "extraordinary circumstances" failed to account for the following facts:  1) Bautista is "not the original creditor" to the loan agreement but "rather [is] a third party who bought the loan [agreement] for pennies on the dollar"; 2) "the value of AMPPR's collateral was . . . battered by the effects of two category 5 hurricanes, Irma and María,"; and 3) "a third force majeure event, the economic crisis brought on by the COVID-19 pandemic . . . has further depressed the value of AMPPR's collateral, making it

- 15 -

impossible for [AMPPR] to refinance its loan so as to pay" Bautista.

But, we agree with Bautista that AMPPR did not set forth below these allegations regarding the impact of hurricanes Irma and María and the COVID-19 pandemic on the value of its collateral property. Because AMPPR does not attempt to explain why we may nevertheless consider these allegations in the first instance on appeal, we decline to do so.[5] See Laureano-Salgado, 933 F.3d at 26 n.10.

AMPPR did allege below that Bautista bought the loan agreement "for a substantial discount." But, AMPPR fails to explain how that circumstance standing alone supports the application of the rebus sic stantibus doctrine. See Sucesión Talavera, 174 P.R. Dec. at 707 n.14 (certified translation at 15 n.14) (explaining that all seven elements are generally "needed for a revision of [a] contract by . . . courts applying the rebus sic stantibus" doctrine); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Finally, AMPPR appears to contend, in a portion of its briefing that is not easy to decipher, that the District Court's decision to dismiss its "remedy at equity" counterclaim conflicts

---

[5] Even if we were inclined to excuse the absence of allegations as to the COVID-19 pandemic, which largely arose after the District Court entered judgment, AMPPR does not explain how the pandemic, standing alone, justifies the relief it seeks.

with the Supreme Court of Puerto Rico's decision in Sucesión Talavera insofar as the District Court decided that it would dismiss AMPPR's counterclaim after concluding that AMPPR was not entitled to relief under either the unjust enrichment or rebus sic stantibus doctrines.  Here, AMPPR appears to be arguing either (1) that there may be an equitable doctrine other than the ones analyzed by the District Court under which the circumstances that it alleged in support of its counterclaim would be sufficient to warrant affording it the relief that it requests, or (2) that there is a basis under the rebus sic stantibus doctrine itself for relaxing the elements that traditionally must obtain under it before a court may undertake to modify the terms of a contract.  Neither argument is convincing.

Insofar as AMPPR's argument regarding Sucesión Talavera is premised on the allegations that it did not raise below in support of its counterclaim, it cannot succeed for the same reasons set forth above.  To the extent that its argument is premised on the allegations that it did raise, AMPPR fails to explain how those circumstances, standing alone, warrant affording it relief under some other, unnamed doctrine of equity or under a relaxed rebus sic stantibus doctrine.  See Zannino, 895 F.2d at 17.  Nor does Sucesión Talavera itself indicate otherwise, given that the circumstances of the present case are "materially different."  In

- 17 -

re Chase Monarch Int'l Inc., 433 F. Supp. 3d 255, 261 (D.P.R. 2019).[6]

## V.

We **affirm** the District Court's denial of AMPPR's motion for jurisdictional discovery and **affirm** the District Court's grant of Bautista's motion to dismiss AMPPR's counterclaims.

---

[6] Seeing no merit to AMPPR's arguments regarding the District Court's dismissal of its counterclaim, we likewise reject AMPPR's request that we certify this issue to the Supreme Court of Puerto Rico. See Fernandez v. Chardon, 681 F.2d 42, 54-55 (1st Cir. 1982) (discussing certification standards).