# United States Court of Appeals
## For the First Circuit

Nos. 19-1251, 19-1786, 20-1284

TRIANGLE CAYMAN ASSET COMPANY,

Plaintiff-Appellee, Cross-Appellant,

v.

LG AND AC, CORP.; LEONARDO GOMEZ-VELEZ; LIVIAM MARGARITA
CASILLAS COLON; CONJUGAL PARTNERSHIP GOMEZ-CASILLAS,

Defendants, Third-Party Plaintiffs, Appellants, Cross-Appellees.

ANIBAL COLON-SANTIAGO,

Defendant.

ORIENTAL BANK,

Third-Party Defendant-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Gelpí, Lipez, and Thompson,
Circuit Judges.

Bamily López-Ortiz, with whom Lizabel M. Negrón-Vargas was on
brief, for appellants/cross-appellees.
Carolina Velaz-Rivero, with whom Luis C. Marini-Biaggi,
Ignacio J. Labarca-Morales, and Marini Pietrantoni Muñiz, LLC were
on brief, for appellee/cross-appellant.
Carlos R. Baralt Suárez, with whom Alfredo Fernández Martínez

was on brief, for third-party defendant/appellee.

October 24, 2022

**GELPÍ**, **Circuit Judge**.  These appeals arise from the district court's grant of summary judgment in favor of Triangle Cayman Asset Company ("Triangle") and Oriental Bank ("Oriéntal") in a foreclosure action filed by Triangle against Liviam Margarita Casillas-Colón, Leonardo Gómez-Vélez, their conjugal partnership, and LG and AC Corporation (collectively, "Appellants"), who in turn filed counterclaims against Triangle and brought Oriental in as a third-party defendant.  During the pendency of the appeals, additional events have made the procedural history of the case lengthy and convoluted.[1]  Ultimately, we conclude that several aspects of the appeals as to Triangle are now moot and dismiss the same without reaching their merits.  We further affirm the district court's dismissal of the breach of contract and fraud counterclaims against Triangle and the entry of summary judgment in favor of Oriental.

## I. Background[2]

### A. The Loan Agreement

In 2006, Appellants obtained a three-year loan with the now-defunct Eurobank for the purchase of real estate in Canóvanas, Puerto Rico, including a gasoline station.  On December 23, 2009,

---

[1] A chronology of important dates is provided as an appendix to help make sense of the complex sequence of events.

[2] The parties do not dispute the relevant facts, as outlined in the district court's reports and recommendations and orders.

the parties refinanced the loan for an additional three-year term, in the amount of $1,240,188, amortized over twenty years (the "Financing Agreement"). Pursuant to said agreement, the loan was set to mature in December 2012. Upon said date, all obligations under the agreement were due and payable without notice or demand. Appellants secured the Financing Agreement with collateral that included mortgages on four properties. They further agreed, in the event of default, to assign any rents, income, and revenues from their lease agreements on the four properties covered by the mortgages to Eurobank.

On April 30, 2010, the Puerto Rico Office of the Commissioner of Financial Institutions closed Eurobank, appointing the Federal Deposit Insurance Corporation ("FDIC") as receiver. Subsequently, the FDIC and Oriental agreed for the latter to acquire Eurobank's Financing Agreement with Appellants.[3]

In 2011, Appellants and Oriental initiated preliminary conversations for the refinancing of the loan. In December 2012, Appellants failed to make the outstanding balloon payment due under the Financing Agreement. However, Oriental granted them two administrative extensions until May 2013.

On March 13, 2013, Oriental sent Appellants a draft proposal for the refinancing of the Financing Agreement, but it was never

_____

[3] Bayview Loan Servicing, LLC ("Bayview"), not a party to this case, in turn, was retained by Oriental to service the loan.

- 4 -

finalized. Appellants continued making monthly payments under the Financing Agreement until May or June 2013, when Oriental refused to accept the payments, on the ground that Appellants had to pay off the loan or refinance it as the entire payment was due. As a result, Oriental appraised Appellants' properties during February 2014 through March 2015 to determine whether the loan had adequate collateral.

On September 28, 2015, Oriental entered into an Assignment and Assumption Agreement with Triangle, transferring Eurobank's prior credit relationship with Appellants from Oriental to Triangle.

## B. <u>District Court Proceedings</u>

On October 20, 2016, Triangle filed its complaint for collection of monies and foreclosure of the mortgages and other collateral based on Appellants' default on the loan. On March 13, 2017, Triangle filed an ex parte motion requesting an order for attachment of rents. On March 22, 2017, the district court granted Triangle's motion and issued an order to Appellants' tenants to directly remit to Triangle all payments that they owed Appellants in connection with the mortgaged properties.

Appellants, in turn, filed counterclaims against Triangle for breach of contract, fraud, invasion of privacy, defamation, violations of the Fair Debt Collection Practices Act ("FDCPA"), and tortious interference with contractual agreements. Appellants

also filed third-party claims against Triangle's predecessor, Oriental, for breach of contract, fraud, defamation, and violations of the FDCPA based on the assignment of the loan agreement.

On January 25, 2018, Triangle moved to dismiss Appellants' counterclaims. In turn, on August 3, 2018, the district court adopted the magistrate judge's report and recommendation, dismissing all such counterclaims, except that of invasion of privacy.

On July 9, 2018, Triangle moved for summary judgment, seeking immediate payment of amounts due or, alternatively, foreclosure of the mortgaged properties. Oriental also moved for summary judgment. On January 22, 2019, the district court adopted the magistrate judge's reports and recommendations and entered an order granting Triangle's and Oriental's motions for summary judgment. Said order also incorporated the August 3, 2018 dismissal of counterclaims against Triangle (minus that for invasion of privacy). On January 28, 2019, the district court entered judgment in the third-party complaint against Oriental, reflecting its dismissal with prejudice. On February 26, 2019, Appellants filed a notice of appeal as to the January 22, 2019 order granting summary judgment in favor of Triangle and Oriental and the January 28, 2019 judgment, which dismissed the third-party

claims against Oriental.  This notice of appeal led to the docketing of appeal number 19-1251 in this court ("Appeal No. 1").

## C. **Post-Notice of Appeal Proceedings**

On April 23, 2019, this court entered an order directing Appellants to show cause as to why Appeal No. 1 should not be dismissed for lack of jurisdiction.  In response, Appellants (1) suggested that they only intended to appeal from the district court's order and judgment dismissing their third-party complaint against Oriental and (2) informed this court that they had filed two motions before the district court to establish finality -- one seeking certification under Federal Rule of Civil Procedure 54(b)[4] and another seeking voluntary dismissal of the sole remaining counterclaim against Triangle for invasion of privacy.  In an

---

[4] Rule 54(b) states:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

- 7 -

electronic amended order entered on May 14, 2019, the district court granted the second motion, dismissing Appellants' invasion of privacy counterclaim against Triangle with prejudice. That same day via a separate electronic order, the district court denied as moot Appellants' motion for Rule 54(b) certification due to their voluntary dismissal of the sole remaining counterclaim against Triangle.[5]

On May 16, 2019, the district court entered a judgment (the "May 16 Judgment") which stated: "In accordance with the Judgment entered on January 28, 2019 [dismissing third-party claims against Oriental] and the Amended Order entered on May 14, 2019 [dismissing with prejudice the invasion of privacy counterclaim against Triangle], this case is DISMISSED with prejudice." Concerned by the wording of the May 16 Judgment, Triangle sought reconsideration, asking the district court to dismiss only the invasion of privacy counterclaim with prejudice and to enter judgment in Triangle's favor on the amended complaint, as set out in the January 22, 2019 order. The district court directed the parties to submit proposed orders and judgments. In response, Triangle filed a motion in compliance, which included two proposed

---

[5] The order entered by the district court states: "Motion for Certificate of Appealability: MOOT. [Appellants] have voluntarily dismissed their third party complaint against Oriental Bank." We note, however, that Appellants' counterclaim against Triangle (rather than any claim against Oriental) was what Appellants moved to voluntarily dismiss.

judgments. However, the district court entered an electronic order on June 20, 2019, denying Triangle's motion in compliance as "unnecessary" and stated: "The judgment entered May 16, 2019 is sufficient." On July 22, 2019, Triangle filed a notice of appeal challenging the effective denial of the motion in compliance, the May 16 Judgment, and the denial of Triangle's motion to alter or amend. This appeal was docketed as 19-1786 ("Appeal No. 2").

Meanwhile, while this court's show cause order was pending in Appeal No. 1 (and Appeal No. 2 had been filed), Appellants petitioned for bankruptcy. This court entered a stay of appeal pending Appellants' bankruptcy proceedings on October 16, 2019.

On January 3, 2020, while both appeals were stayed, the district court sua sponte entered two judgments. First, the district court entered a partial judgment ordering Appellants to pay Triangle $1.4 million (to satisfy the remaining balance on the loan). Second, it entered a final judgment which incorporated (1) the partial judgment entered that same day, (2) the judgments entered on January 28, 2019 (dismissing Appellants' third-party complaint against Oriental), and (3) the judgment entered on May 14, 2019 (dismissing Appellants' invasion of privacy counterclaim against Triangle) -- thereby dismissing the entire case with prejudice (the "January 3 Judgments").

On January 14, 2020, Appellants filed a motion to alter and amend, asking the district court to set aside its January 3

- 9 -

Judgments on the ground that it lacked jurisdiction because of the automatic bankruptcy stay. That same day, the district court noted the pendency of the stay, yet did not vacate the January 3 Judgments. Appellants hence filed a second notice of appeal challenging the January 3 Judgments. This appeal is pending as appeal 20-1284 ("Appeal No. 3"). Via order on August 5, 2020, we consolidated the three appeals.

## II. Appellate Jurisdiction: Finality

Prior to addressing the merits of the claims on appeal, we must first examine the jurisdictional issues these consolidated appeals present. As previously noted, this court issued a show cause order on April 23, 2019 flagging the issue of finality, observing that the judgment being appealed was not final or appealable on an interlocutory basis given that at the time one claim remained pending before the district court. Furthermore, said order signaled a timeliness issue regarding the January 22, 2019 order.

Oriental posits that we have no jurisdiction over Appeal No. 1 because Appellants filed their notice of appeal as to a non-final judgment on February 26, 2019 and failed to subsequently file a notice of appeal after the May 16 Judgment.[6]

---

[6] Triangle asserts that the portion of Appeal No. 1 challenging the district court's January 22, 2019 order falls out of the statutory timeframe to appeal provided by Federal Rules of Appellate Procedure 3(a)(1) and 4(a)(1). Because, as described

- 10 -

Generally, this court only has jurisdiction over appeals from final decisions from district courts, 28 U.S.C. § 1291, and certain interlocutory and collateral orders, see 28 U.S.C. § 1292; Fed. R. Civ. P. 54(b); Bautista Cayman Asset Co. v. Asociacion de Miembros de la Policia de P.R., 17 F.4th 167, 170-71 (1st Cir. 2021). Final decisions -- which we also often refer to as final judgments -- are those that "dispose[] of all claims against all parties." Galvin v. U.S. Bank, N.A., 852 F.3d 146, 154 (1st Cir. 2017) (quoting Me. Med. Ctr. v. Burwell, 841 F.3d 10, 15 (1st Cir. 2016)). Here, Appeal No. 1 was docketed before the district court entered a final judgment, given that a pending claim was still alive, to wit, the invasion of privacy counterclaim against Triangle.[7] However, given that the district court issued subsequent orders, including the May 16 Judgment and the January 3 Judgments, we must determine whether Appellants' prematurely

---

below, the outcome on the merits of Appeal No. 1 ultimately is straightforward, we bypass this question. See VS PR, LLC v. ORC Miramar Corp., 34 F.4th 67, 70 n.3 (1st Cir. 2022) (noting that, unlike Article III jurisdiction, which we may never disregard, "we may occasionally bypass statutory jurisdiction" if there is no merit to the appeal (quoting Alvarado v. Holder, 743 F.3d 271, 276 (1st Cir. 2014))).

[7] Moreover, the district court did not enter a partial judgment under Federal Rule Of Civil Procedure 54(b), which would have indicated that claims as to Oriental had been fully adjudicated. See United States v. Univ. of Mass., Worcester, 812 F.3d 35, 38, 45 (1st Cir. 2016).

- 11 -

filed notice of appeal ripened with the entry of any of these subsequent judgments.

Oriental argues that the entry of the May 16 Judgment had no effect on the prematurely filed notice of appeal because said judgment dismissed the case entirely as to all parties. Additionally, Oriental asserts that Appellants should have filed a second notice of appeal after the May 16 Judgment. Appellants, on the other hand, claim that, if the May 16 Judgment was the final judgment, then pursuant to Federal Rule of Appellate Procedure 4(a)(2), the prematurely filed notice of appeal related forward. If not, they argue the January 3 Judgments were the final ones that caused the prematurely filed notice of appeal to ripen. We agree with Appellants.

The Federal Rules of Appellate Procedure allow us to treat "[a] notice of appeal filed after the court announces a decision or order--but before the entry of the judgment or order--[] as filed on the date of and after the entry." Fed. R. App. P. 4(a)(2). As the Supreme Court has observed, the Rule "permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment . . . when a district court announces a decision that would be appealable if immediately followed by the entry of judgment." FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co., 498 U.S. 269, 276 (1991) ("[P]ermitting the notice of appeal to become effective when judgment is entered does not catch the

appellee by surprise."); see also Ramos-Santiago v. WHM Carib, LLC, 919 F.3d 66, 70 (1st Cir. 2019); Clausen v. Sea-3, Inc., 21 F.3d 1181, 1185 (1st Cir. 1994).

As the Supreme Court in FirsTier explained, Rule 4(a)(2) does not improperly expand the courts of appeals' § 1291 jurisdiction. The source of finality for jurisdictional purposes is the eventual judgment required by Rule 4(a)(2). FirsTier, 498 U.S. at 274-76. The previously announced "decision" must be encapsulated by that final judgment, such that an appellant's blunder in prematurely filing the notice of appeal is "understandable" for "[l]ittle would be accomplished by prohibiting the court of appeals from reaching the merits of such an appeal." Id. at 276. Thus, we conclude that Appellants' prematurely filed notice of appeal related forward to the May 16 Judgment. No second notice was required, either by Rule 4(a)(2) itself or by caselaw interpreting the rule. Id. at 277. Therefore, we conclude that we have jurisdiction over Appeal No. 1.

### III. Article III Jurisdiction: Mootness

Article III of the Constitution confines federal courts to deciding actual cases and controversies. U.S. Const. art. III, § 2, cl. 1. A case is moot, and therefore non-justiciable, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Harris v. Univ. of

- 13 -

Mass. Lowell, 43 F.4th 187, 191 (1st Cir. 2022) (quoting Chafin v. Chafin, 568 U.S. 165, 172 (2013)).

Here, Appellants have satisfied the amounts due under the Financing Agreement, after reaching an agreement for the sale of real estate collateral to third-party VPP Holdings LLC. The sale of the collateral took place on July 7, 2020, and the proceeds were delivered to Triangle to pay off the amounts owed. As a result, Triangle filed a motion before the district court informing the court of the satisfaction of judgment, which Appellants did not oppose. Triangle also filed a similar motion before this court on October 13, 2020, requesting dismissal of the appeals. Subsequently, the district court entered an order noting the satisfaction of the monies owed and a judgment dismissing the case -- the fifth in this case. Consequently, many of Appellants' challenges to the district court's decisions regarding Triangle -- the denial of Appellants' motion to dismiss Triangle's claims (including Appellants' argument that Triangle's complaint was time-barred); the denial of Appellants' motion to set aside the district court's ex parte attachment order; the denial of Appellants' motion to strike an affidavit submitted by Triangle; and the grant of summary judgment to Triangle -- are now moot.[8]

---

[8] In the district court proceedings, Appellants unsuccessfully challenged Triangle's complaint, the district court's ex parte attachment order, and an affidavit submitted by Triangle. Appeal No. 1 included appeals from these decisions.

- 14 -

Our inquiry as to said matters ends here.  Additionally, Appeal No. 2 (Triangle's challenge to the district court's wording in the May 16 Judgment) is also moot.  With the jurisdictional issues set aside, we now proceed to the merits of Appellants' breach of contract and fraud counterclaims against Triangle and third-party claims against Oriental.

## IV. The Merits

We review a district court's grant of summary judgment de novo, resolving it is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Modeski v. Summit Retail Sols., Inc., 27 F.4th 53, 56 (1st Cir. 2022).  "We do this while 'drawing all reasonable inferences in favor of the non-moving party.'"  Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018) (quoting Roman Cath. Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013)).  Similarly, we review the grant of a motion to dismiss de novo, Lyman v. Baker, 954 F.3d 351, 359 (1st Cir. 2020), accepting well-pled facts as true and drawing all inferences in favor of the non-moving party, Irizarry v. United States, 427 F.3d 76, 77 (1st Cir. 2015).

**A.** **Appellants' Counterclaims Against Triangle and Third-Party Claims Against Oriental (Appeal No. 1)**

**1. Breach of Contract**

Appellants seek review of the district court's grant of summary judgment in favor of Oriental and the dismissal of the breach of contract and fraud counterclaims against Triangle. Because Appellants seek review of closely related claims as to both Oriental and Triangle, we address them simultaneously. Appellants assert that the district court's judgment in Oriental's favor constitutes error because there was, in fact, a binding loan proposal between the parties that was breached by Oriental; Oriental committed fraud by selling the loan to Triangle after promising to refinance it; and Oriental violated the FDCPA. As to Triangle, Appellants contend that the district court failed to review the Financing Agreement in its entirety and misconstrued Puerto Rico contractual principles by failing to consider extrinsic evidence.

Neither party disputes that Puerto Rico contract principles apply to the instant diversity action. Almeida-León v. WM Cap. Mgmt., Inc., 993 F.3d 1, 7 (1st Cir. 2021). A cognizable claim for breach of contract under "Puerto Rico law requires sufficient allegations of a breach of the contractual terms and that the breach caused an identifiable harm." Almeida-León, 993 F.3d at 13; Soc. de Gananciales v. Velez & Asoc., 145 P.R. Dec. 508 (1998).

- 16 -

When disputes arise as to contract interpretation, the 1930 Civil Code of Puerto Rico (applicable at the time of the proceedings below) explicitly calls for construing "the meaning of [the contract's] terms." Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo Inc., 96 F.3d 10, 15 (1st Cir. 1996) (quoting Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, 839 F. Supp. 98, 104 (D.P.R. 1993), aff'd, 36 F.3d 1089 (1st Cir. 1994)). Thus, Article 1233 provides that "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail." P.R. Laws Ann. tit. 31, § 3471. Courts are barred from considering extrinsic evidence in a written contract where the terms are clear and unambiguous. Borschow Hosp., 96 F.3d at 15-16; Vulcan Tools of P.R. v. Makita U.S.A., Inc., 23 F.3d 564, 567 (1st Cir. 1994); Marina Indus., Inc. v. Brown Boveri Corp., 114 P.R. Dec. 64, 72 (1983).

In support of their breach of contract claims, Appellants posit two factual scenarios that are simply unsupported by the record. First, that Oriental's in-house approval of the loan proposal -- without being signed by both parties -- perfected a new contract. Second, that Oriental's failure to notify Appellants of the approval of the loan violated its duty of good faith. Appellants thus assume that the loan proposal for the refinancing

of the Financing Agreement was signed, valid, and in effect. However, nowhere in the Financing Agreement do we find a provision requiring refinancing of the loan and nowhere in the record do we find that any new loan proposal was ever finalized. Instead, the Financing Agreement is clear and unambiguous as to the following: the term loan was to be paid in full no later than thirty-six months after the date of the Financing Agreement, that is, December 23, 2012; the failure to pay, when due, any principal of or interest on the Promissory Note is considered an event of default; no delay or failure of the bank in the exercise of any right (e.g. collection of amounts due and payable) shall affect said right; and no amendment of any provision of the loan agreement shall be effective "unless it is in writing and signed by the Bank and each Borrower[.]" (Emphasis added). Here, there exists no written agreement signed by both parties, Appellants and Oriental, that indeed refinances the loan and binds Triangle. Furthermore, there is no provision in the Financing Agreement that mandates refinancing.

As if the aforementioned were not sufficient, Appellant Leonardo Gómez admitted in his deposition that the Financing Agreement's balloon payment was set to expire in 2012 and the balance due in December 2012 was not paid off. Additionally, he testified that the loan proposal "was never signed[] because the people that we were in communication with never contacted us, for

us to be able to refinance." Lastly, when questioned on whether the loan proposal was signed, he replied "[n]o, it was never signed."

The clause in the Financing Agreement that points to a revision of the commercial credit on May 5, 2010 in no way implies or creates an obligation to refinance. Appellants attempt to evade the effect of the Financing Agreement provisions by arguing that they engaged in preliminary negotiations for refinancing with representatives of Oriental and Bayview. Additionally, Appellants argue that Oriental dealt in bad faith when it failed to notify them of the alleged approval of the loan proposal.[9] Once again, Appellants rely upon the misconception that their loan proposal was approved and in effect, despite the fact that the record does not so evidence.

Nonetheless, Appellants posit that "if there is no mention in the Financing Agreement of an obligation to refinance, then the proper inquiry was to ascertain the intention of the parties at the time of entering into the contract." Specifically, Appellants claim that the district court erred in failing to consider the parties' shared intentions to refinance, and the fact that Appellants stopped making payments to Oriental "to force a reaction

---

[9] Article 1210 of the Civil Code of Puerto Rico establishes the duty to act in good faith while fulfilling a contract. P.R. Laws Ann. tit. 31, § 3375; Unisys Puerto Rico, Inc. v. Ramallo Bros. Printing, Inc., 128 P.R. Dec. 842, 852 (1991).

from Bayview," the loan servicer. But, again, when contracts are unambiguous, as this one is, we need not consider extrinsic evidence. See P.R. Laws Ann. tit. 31, § 3471; Borschow Hosp., 96 F.3d at 15-16; Vulcan Tools, 23 F.3d at 567. The Financing Agreement is straightforward in stating that said agreement could not be amended unless in writing and signed by the Bank and Appellants. Subsequent events cannot change what the parties agreed to, and Appellants have not alleged any ambiguity within the contract.[10] In sum, the loan proposal was never signed by both parties, thus there was no agreement to refinance the loan and no breach when Oriental, and later Triangle, insisted on payment.[11]

## 2. Fraud

In federal diversity cases involving claims of fraud, state law governs all issues related to the elements of fraud. See Borschow Hosp., 96 F.3d at 15. Under Puerto Rico law, fraud arising out of a contractual relationship "is a type of contractual deceit" that occurs at the formation of a contract or during the performance of said contract. Dialysis Access Ctr., LLC v. RMS

---

[10] To the extent that any issues prior to the contract's formation could be alleged, such as under the Puerto Rico doctrine of *culpa in contrahendo*, Appellants did not include any such claim in their third-party complaint against Oriental and as such, the claim is waived.

[11] As discussed above, the Financing Agreement did not include an obligation to refinance, foreclosing Appellants' breach of contract arguments under the 2009 contract.

Lifeline, Inc., 638 F.3d 367, 378 (1st Cir. 2011); see also Colón v. Promo Motor Imps., Inc., 144 P.R. Dec. 659, 668 (1997) (official translation). If the contractual deceit, known in Spanish as "dolo," takes place during the performance of the contractual obligation, "a plaintiff must establish '(1) the intent to defraud; (2) reliance on the fraudulent acts; (3) the false representations used to consummate the fraud; and (4) that the fraud was consummated by virtue of such representations.'" Est. of Berganzo-Colon v. Ambush, 704 F.3d 33, 39 (1st Cir. 2013) (quoting P.R. Elec. Power Auth. v. Action Refund, 472 F. Supp. 2d 133, 138-39 (D.P.R. 2006)); see also P.R. Laws Ann. tit. 31, §§ 3018, 3019. Good faith is presumed between contracting parties and the party that seeks to rebut this presumption carries the burden of proof. Citibank Glob. Mkts., Inc. v. Rodriguez Santana, 573 F.3d 17, 29 (1st Cir. 2009); Citibank v. Dependable Ins. Co., Inc., 121 P.R. Dec. 503 (1988).

Appellants contend that Oriental and Triangle engaged in fraud because Oriental promised them it would refinance the Financing Agreement but instead sold the loan to Triangle, who allegedly had acquired the same duties as Oriental and had to complete the process for the refinancing. In order to establish fraud, Appellants must prove that Oriental and Triangle made false representations, that Appellants reasonably relied on said representations, that they suffered an injury as a result of that

reliance, and that Oriental and Triangle had the intent to defraud. P.R. Elec. Power Auth. v. Action Refund, 515 F.3d 57, 66 (1st Cir. 2008). Nothing in the record supports a finding that either Oriental or Triangle made false representations with the intent to defraud Appellants. As Oriental correctly states, it could not have committed fraud by failing to honor the loan proposal as a new contract. Consequently, Triangle had no refinancing obligation to note. This is so because, as discussed supra, the provisions of the Financing Agreement are clear and unambiguous in stating that any amendment to said loan agreement must be in writing and signed by both parties.

### 3. FDCPA Claim

Appellants contended in their third-party complaint against Oriental that the bank violated the FDCPA by using "false, deceptive, or misleading representation[s] or means in connection with the collection of [the] debt." 15 U.S.C. § 1692e. However, Appellants' opening brief to this court fails to include and develop said claim. We "deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument." Aquinnah/Gay Head Cmty. Ass'n., Inc. v. Wampanoag Tribe of Gay Head (Aquinnah), 989 F.3d 72, 80 (1st Cir. 2021) (quoting Rodríguez v. Mun. of San Juan, 659 F.3d 168, 175 (1st Cir. 2011)); see Vázquez-Rivera v. Figueroa, 759 F.3d 44, 46-47 (1st Cir. 2014) (deeming waived and therefore declining to review issues not

briefed, even where appellant's "notice of appeal signaled his intent to" raise them).  Thus, we need not reach the FDCPA claim.

## B. __Appellants' Challenge to the January 3 Judgments (Appeal No.3)__

Before we discuss this issue, we succinctly recap the procedural history.  While Appeal No. 1 and Appeal No. 2 were pending before this court and stayed due to the bankruptcy proceedings, the district court issued a new partial judgment on January 3, 2020.  Said partial judgment laid down the specific amounts Appellants were to pay to Triangle and ordered the foreclosure of the properties if payment was not made within 14 days.  Additionally, the district court entered a new final judgment incorporating the partial judgment with the judgments entered on January 28, 2019 and May 14, 2019 --dismissing the case with prejudice.  Appellants filed a timely motion for reconsideration before the district court, arguing it lacked jurisdiction to issue the January 3 Judgments.  The district court noted the motion and indicated that "[t]he judgments have been issued and the court of appeals has stayed the appeals." Subsequently, Appellants filed Appeal No. 3.  Triangle opposes and posits this appeal should be dismissed because the district court had no jurisdiction to enter the January 3 Judgments.  In turn, Appellants oppose Triangle's assertion, stating that even if the judgments were ineffective when entered, they became effective once the bankruptcy automatic stay was lifted on May 12, 2020.  We

- 23 -

agree with Triangle that there was, in fact, a bankruptcy automatic stay in place that renders void the January 3 Judgments.

Section 362(a)(1) of the Bankruptcy Code, 11 U.S.C. § 362(a)(1), "provides that the filing of a bankruptcy petition stays the commencement or continuation of all nonbankruptcy judicial proceedings against the debtor." In re Soares, 107 F.3d 969, 973 (1st Cir. 1997). When the district court entered the January 3 Judgments, the automatic bankruptcy stay was in effect, as it had been since Appellants filed for bankruptcy on August 15, 2019. The automatic stay began at that very moment and "operate[d] without the necessity for judicial intervention." Id. at 975 (internal quotation marks omitted). We have consistently recognized that actions in contravention of an automatic stay are void and have no legal effect. Id. at 976; I.C.C. v. Holmes Transp., Inc., 931 F.2d 984, 987-88 (1st Cir. 1991). Appellants fail to cite to any authority that supports their contention that the January 3 Judgments automatically became effective once the bankruptcy case was dismissed. We agree with Triangle that the January 3 Judgments were void and did not become effective when the automatic stay was lifted.

## C. Waived Claims

Appellants also advance that the district court erred in dismissing the tortious interference with contractual relations and defamation claims against Triangle. However, they have failed

to develop any argument as to those counterclaims. Therefore, we need not address them here. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")

## V. Conclusion

For the foregoing reasons, we affirm the dismissal of the breach of contract and fraud counterclaims against Triangle and the granting of summary judgment in favor of Oriental. We determine that Appeal No. 1 is moot in all other aspects as well as Appeal No. 2. Lastly, we vacate the district court's January 3 Judgments that form the basis of Appeal No. 3, and remand for further proceedings, as needed. Costs are awarded to Triangle and Oriental.

## Chronology of Procedural Events

Table 1

| | |
|---|---|
| October 20, 2016* | Triangle files its complaint in the district court for collection of monies due under the loan agreement. <br><br>*Triangle files an amended complaint on August 14, 2017. |
| May 2, 2017 | Appellants file their answer to the complaint and assert counterclaims against Triangle and third-party claims as to Oriental. |
| August 3, 2018 | The district court enters an order adopting the magistrate judge's report and recommendation dismissing Appellants' counterclaims, except for the invasion of privacy counterclaim. |
| January 22, 2019 | The district court enters an order adopting the magistrate judge's report and recommendation granting Triangle's and Oriental's respective summary judgment motions. The sole remaining cause of action is Appellants' invasion of privacy counterclaim against Triangle. |

| | |
|---|---|
| January 28, 2019 | The district court enters judgment on Appellants' third-party complaint against Oriental, dismissing it with prejudice. |
| February 26, 2019 | Appellants file a notice of appeal, challenging the district court's order granting summary judgment in favor of Oriental. That appeal is No. 19-1251. |
| April 23, 2019 | This court enters an order directing Appellants to show cause why Appeal No. 19-1251 should not be dismissed for lack of jurisdiction. |
| May 7, 2019 | Appellants file in the district court a motion to voluntarily dismiss their invasion of privacy counterclaim against Triangle. |
| May 14, 2019 | The district court enters an amended order dismissing Appellants' invasion of privacy counterclaim against Triangle with prejudice. The district court also denies as moot Appellants' motion for Rule 54(b) certification. |
| May 16, 2019 | The district court enters a final judgment (in accordance |

| | |
|---|---|
| | with the judgment entered on January 28, 2019, and the amended order entered on May 14, 2019) dismissing the case with prejudice. |
| June 5, 2019 | Triangle files in the district court a motion to alter judgment. |
| June 7, 2019 | The district court orders parties to submit proposed orders and judgments. |
| June 20, 2019 | The district court denies Triangle's motion in compliance as unnecessary and states: "The judgment entered on May 16, 2019 is sufficient." |
| July 22, 2019 | Triangle files a Notice of Appeal challenging the district court's denial of the motion in compliance as unnecessary. That appeal is No. 19-1786. |
| August 15, 2019 | Appellants file a chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Puerto Rico. |
| September 11, 2019 | Appellants file a motion informing this court of their bankruptcy in both 19-1251 and 19-1786. |
| October 8, 2019 | Oriental files a motion to dismiss in 19-1251, asserting |

| | |
|---|---|
| | the appeal should be dismissed for lack of finality. |
| October 16, 2019 | This court stays appeals 19-1251 and 19-1786 pursuant to 11 U.S.C. § 362(a)(1). |
| January 3, 2020 | While both appeals were stayed, the district court sua sponte enters (1) a partial judgment memorializing its previous order granting summary judgment to Triangle and (2) a final judgment, which incorporated the partial judgment and the judgments entered January 28, 2019 and May 14, 2019. |
| January 14, 2020 | Appellants file in the district court a motion to alter judgment, asking it to set aside the January 3, 2020 judgments because of the bankruptcy automatic stay. |
| January 24, 2020 | The district court "notes" the motion to alter judgment and acknowledges that there is a stay in place. |
| February 21, 2020 | Appellants file a second notice of appeal challenging the January 3, 2020 judgments. That appeal is No. 20-1284. |
| May 12, 2020 | This court enters an order vacating the bankruptcy stay |

| | |
|---|---|
| | entered in Appeal Nos. 19-1251 and 19-1786. |
| October 13, 2020 | Triangle files before the district court an informative motion regarding the satisfaction of the monies due to it as per the district court's judgment. The district court dismisses the case with prejudice after noting the judgment had been satisfied. |
| October 13, 2020 | Triangle files a motion for dismissal of appeals based on satisfaction of judgment. Appellants oppose the dismissal. |
| April 14, 2021 | This court denies without prejudice Triangle's motion to dismiss. |